**Victoria L. OUELLETTE, et al., Plaintiffs,**

v.

**The CHRIST HOSPITAL, et al., Defendants.**

No. C–1–96–370.

United States District Court, S.D. Ohio, Western Division.

Oct. 10, 1996.

Thomas F. Payne, Montgomery, OH, for plaintiffs.

Nancy Ann Lawson, June Smith Tyler, Dinsmore & Shohl, Cincinnati, OH, for defendant Christ Hospital.

Walter Elliott Haggerty, Jr., Frost & Jacobs, Cincinnati, OH, William J. O'Neill, McDonald, Hopkins, Burke & Haber Co., LPA, Cleveland, OH, for defendant ChoiceCare Health Plans Inc.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiffs' motion to remand (doc. 8), Defendant The Christ Hospital's response (doc. 10), Defendant ChoiceCare's response (doc. 11) and Plaintiffs' reply (doc. 12).

## BACKGROUND

Plaintiff, Victoria Ouellette, is employed by Federated Credit Services. As a benefit incident to employment, she receives health insurance offered by ChoiceCare. ChoiceCare uses a process called Utilization Management to determine if health services are medically necessary. ChoiceCare has a policy of limiting the hospital stays of patients according to predetermined standards. In this instance, ChoiceCare policy limited a hospital stay for the removal of ovaries to two days. Ms. Ouellette alleges that ChoiceCare contracts directly with health care providers to ensure adherence with these policies.

Ms. Ouellette entered The Christ Hospital on September 30, 1994, for the surgical removal of her ovaries. Early on the morning of October 2, 1994, Ms. Ouellette's obstetrics and gynecology specialist examined her and authorized her discharge from the hospital. Later on October 2, 1994, Ms. Ouellette began to experience severe pain and fever and to pass blood clots in her urine. The nursing staff failed to inform Ms. Ouellette's specialist about the change in her condition. The nurse on duty told Ms. Ouellette that she would have to leave the hospital by 6:00 p.m. because of ChoiceCare's policy limiting hospital stays. Ms. Ouellette went home that day and continued to suffer from the after-effects of surgery.

Ms. Ouellette sued The Christ Hospital and ChoiceCare in the Court of Common Pleas, Hamilton County, Ohio. Ms. Ouellette's specialist stated that he would not have authorized her discharge had he known of the deterioration of her condition. She claims medical malpractice on the part of the hospital staff. She further alleges that ChoiceCare's financial relationship with The Christ Hospital caused that malpractice. Defendants removed the case to the federal court pursuant to 28 U.S.C. §§ 1441 and 1446, based upon federal question jurisdiction. Defendants argue that Ms. Ouellette's claims arise under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

### STANDARD OF REVIEW

■ On a motion to remand, the issue is whether the case was removed properly in the first instance. Generally, a defendant has a right to remove "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States ... without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). In order to find that a cause of action arises under federal law, the plaintiff's well-pleaded complaint must on its face raise an issue of federal law. *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).

Defendants argue that Ms. Ouellette's claims arise under the laws of the United States because they are "completely preempted" by ERISA, 29 U.S.C. § 1132(a). Ordinarily, federal preemption is only a defense to a plaintiff's suit, and therefore, the defense does not appear on the face of the plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). The Supreme Court, however, has created an exception to the well-pleaded complaint rule. *Id.; see also, Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (finding that § 301 of LMRA displaces any state law claims related to the breach of contract between management and a labor organization). The Supreme Court stated that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co.,* 481 U.S. at 63–64, 107 S.Ct. at 1546–1547. Whether a statute has such preemptive force is a question of Congressional intent. *Id.* at 66, 107 S.Ct. at 1548. ("The touchstone of the federal district court's removal jurisdiction is ... the intent of Congress.").

■ Only when an area of law is completely preempted does preemption lead to federal question jurisdiction. On the other hand, federal preemption that serves only as a defense to a state law claim (often referred to as "conflict" or "defensive" preemption) does not confer federal question jurisdiction. *Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir. 1995). In other words, even though a cause of action is preempted by a statute, that preemption does not necessarily mean that the cause of action presents a federal question. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 398, 107 S.Ct. 2425, 2432–33, 96 L.Ed.2d 318 (1987) ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the LMRA does not establish that they are removable to federal court."); *Warner v. Ford Motor Co.,* 46 F.3d 531, 535 (6th Cir.1995) (finding that "removal and preemption are two different concepts."). The difficulty arises in trying to distinguish between claims that are "com-

pletely preempted" and claims to which "conflict or defensive preemption" is a defense.

ERISA contains two provisions pertaining to preemption. The first is 29 U.S.C. § 1132. It is the civil enforcement provision of ERISA, which impliedly preempts actions brought in state court that could have been brought under its provisions. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 943 (6th Cir.1994). Under § 1132, anyone who qualifies as a "participant or beneficiary" of an employee benefit plan may sue to enforce his rights conferred by ERISA. *Id.* The second is § 1144, the express preemption provision of ERISA. It preempts all non-exempt state laws insofar as they "relate to" an employee benefit plan. *Id.*

In *Metropolitan Life*, the Supreme Court found that Congress intended to make causes of action within the scope of the civil enforcement provisions of ERISA (§ 1132) removable to federal court. *Metropolitan Life Ins. Co.*, 481 U.S. at 66, 107 S.Ct. at 1547–48. The Sixth Circuit has found that complete preemption under *Metropolitan Life* is limited to preemption claims under § 1132(a). *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 943 (6th Cir.1994). The Sixth Circuit noted that the Supreme Court relied on the similarity between the language of § 1132 of ERISA and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). *Id.* at 944. Furthermore, the legislative history of § 1132 expressed an obvious intent to mirror the preemptive effect of § 301 of the LMRA. *Id.* The Sixth Circuit did not find a similar historical and textual foundation for complete preemption under § 1144. Therefore, the Sixth Circuit concluded that a preemption defense under § 1144 of ERISA does not create federal jurisdiction for the purpose of removal. *Id.* at 945.

"Thus, a state cause of action may be removed to federal court if the cause of action is preempted by ERISA and falls within the scope of ERISA's civil enforce-

ment provision, section 502(a) [codified at 29 U.S.C. § 1132(a)]." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995); *see also Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir.1995) (concluding that § 1132(a) provides a basis for complete preemption, whereas § 1144(a) provides the basis for conflict preemption). The Seventh Circuit summarized the distinction between conflict and complete preemption as applied under ERISA:

> The difference between complete preemption under § 502(a) [§ 1132(a)] and conflict preemption under § 514(a) [§ 1144(a)] is important because complete preemption is an exception to the well-pleaded complaint rule that has jurisdictional consequences. If a state law claim has been "displaced," and therefore completely preempted by § 502(a), then a plaintiff's state law claim is properly "recharacterized" as one arising under federal law. But state law claims that are merely subject to "conflict preemption" under § 514(a) are not recharacterized as claims arising under federal law; in such a situation, the federal law serves as a defense to the state law claim, and therefore, under the well-pleaded complaint rule the state law claims do not confer federal question jurisdiction. Thus, complete preemption under § 502(a) creates federal question jurisdiction whereas conflict preemption under § 514(a) does not.

*Id.* at 640.

## DISCUSSION

The question on this motion to remand is whether Ms. Ouellette's cause of action falls with the scope of ERISA's civil enforcement provisions of § 1132(a) [1]. Ms. Ouellette filed a two count complaint alleging medical malpractice on the part of The Christ Hospital and ChoiceCare. Specifically, Ms. Ouellette asserts that ChoiceCare breached its duty to her by "limiting the hospital stays of its subscribers and enforcing those limitations

---

1. § 1132. Civil enforcement
   (a) Persons empowered to bring a civil action
   A civil action may be brought—(1) by a participant or beneficiary—

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

by an unreasonable system of financial incentives to hospitals."

ChoiceCare argues that this claim is preempted by § 1132(a). Section 1132(a) "preempts state claims by 'participants or beneficiaries' to enforce certain rights guaranteed by ERISA." *Alexander*, 13 F.3d at 946.

■ There are two prerequisites to complete preemption under § 1132(a). First, the plaintiff must be eligible to bring an action under § 1132(a). *Rice*, 65 F.3d at 641. ("[I]t seems clear that the ability to bring suit under § 502(a) is an element of 'complete preemption.'"). Section 1132 provides that a participant or beneficiary of a plan may bring suit to enforce her rights under the plan. Ms. Ouellette acknowledges that she is a participant in a qualified employer benefit plan under ERISA, and thus, she is eligible to bring suit as a plan participant. Second, the claim must come within the subject matter of § 1132(a). *Id.* Thus, we must determine whether Ms. Ouellette's claim—that ChoiceCare's financial arrangements with The Christ Hospital caused the hospital to commit malpractice—comes within the scope of § 1132(a) as a suit "to recover benefits ... or to enforce rights under the terms of the plan."

■ The Sixth Circuit has not developed a test to determine when a claim falls within § 1132(a). The Seventh Circuit, however, has adopted a test for this situation which we find to be helpful. Because of the scarcity of law concerning the parameters of § 1132(a), the Seventh Circuit looked to the case law discussing complete preemption under § 301 of the LMRA for assistance in interpreting § 1132(a). The Seventh Circuit found that "[t]he common thread running through [the] cases [interpreting § 301] is that complete preemption is required where a state law claim cannot be resolved without interpretation of the contract governed by federal law." *Rice*, 65 F.3d at 644. The Seventh Circuit concluded that similar analysis was appropriate under § 1132(a) because § 1132(a) concerns claims to recover benefits or enforce rights "under the terms of the plan." *Id.* Thus, "a suit brought by an ERISA plan participant is an action to 'enforce his rights

under the terms of a plan' within the scope of § 502(a)(1)(B) where the claim rests upon the terms of the plan or the 'resolution of the [plaintiff's] state law claim ... require[s] construing [the ERISA plan].'" *Id.* at 644–45 (quoting *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988)).

ChoiceCare argues that Ms. Ouellette's claim is "derive[d] from the type and extent of the benefits promised or provided." ChoiceCare argues that this claim is really an attempt to "recover benefits, enforce rights under a plan or clarify rights to future benefits." Furthermore, ChoiceCare asserts that Ms. Ouellette's claim questions ChoiceCare's "utilization review" which "is a means of processing claims, and therefore, falls within the scope § 502(a)." *Tolton*, 48 F.3d at 942.

In *Tolton*, Henry Tolton committed suicide after being denied in-patient drug rehabilitation services by his employer's health insurance provider. Plaintiffs, co-administrators of Henry's estate, sued his health care providers and health insurer in state court. *Id.* at 939. Plaintiffs asserted claims for medical malpractice, negligent and intentional refusal to authorize in-patient treatment, bad faith denial, breach of contract and negligent retention of health care providers. *Id.* Defendants removed the case to federal court, and the district court granted summary judgment for the defendants, finding that plaintiffs state law claims were preempted by ERISA. On appeal, plaintiffs challenged the entry of judgment and the removal. The Sixth Circuit concluded that plaintiff's claims were completely preempted under § 502(a) of ERISA. *Id.* at 941. The court found that the insurers use of utilization review to deny benefits was "a means of processing claims, and, therefore, falls within the scope of § 502(a)." *Id.* at 942.

We find that Ms. Ouellette's claims do not rest upon the terms of the benefits plan nor does resolution of her claims require the Court to construe the terms of her benefits plan. Furthermore, we find Ms. Ouellette's claims to be distinguishable from the claims in *Tolton*.

Ms. Ouellette's claim against ChoiceCare focuses upon the relationship between ChoiceCare and The Christ Hospital, not between her and ChoiceCare. Ms. Ouellette is not challenging the amount of benefits but the quality of the service she received. She asserts that ChoiceCare maintains financial incentives with its providers the effect of which undermine the quality of care provided by the providers. Such a claim is separate and distinct from a claim for benefits under a plan. Several courts have concluded that medical malpractice claims against HMO's based upon *respondeat superior* or implied agency liability theories do not require the construing of the benefits plan. *See e.g., Rice*, 65 F.3d at 645; *Dukes v. United States Healthcare Inc.*, 57 F.3d 350, 357, 360–61 (3rd Cir.1995) ("plaintiffs' claims ... merely attack the *quality* of benefits they received: The plaintiffs here simply do not claim that the plan erroneously withheld benefits due.") (emphasis in original).

Likewise, Ms. Ouellette's claim that ChoiceCare's financial arrangements with The Christ Hospital caused the hospital to commit malpractice will not require review of ChoiceCare's utilization review or otherwise demand construction of the ChoiceCare plan. Thus, we find that a claim that the hospital acted negligently due to its relationship with an HMO is not a suit to "enforce rights under the terms of a plan." Accordingly, Ms. Ouellette's claim is not completely preempted by ERISA, and therefore, the Court has no jurisdiction under the well-pleaded complaint rule. Whether Ms. Ouellette's claims are ultimately preempted will be a matter for the state court to decide.

## CONCLUSION

Accordingly, the Court GRANTS Plaintiffs' motion to remand. The Court hereby REMANDS this case to the Court of Common Pleas of Hamilton County, Ohio.

SO ORDERED.