Steven BAUMAN and Michelle Bauman, Individually and as Administrators ad prosequendum of the Estate of Michelina Bauman, Deceased, Plaintiffs,

v.

U.S. HEALTHCARE, INC., Kennedy Memorial Hospital, Washington Township Division, Kamila Nemeh, M.D., and John Doe(s)(1–5), Defendants.

Civil Action No. 97–2905.

United States District Court,
D. New Jersey.

March 31, 1998.

Amended Order April 1, 1998.

Joshua M. Spielberg, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Cherry Hill, NJ, for Plaintiffs.

Edward S. Wardell, Kelley, Wardell & Craig, Haddonfield, NJ, for Defendant.

## OPINION

BROTMAN, District Judge.

This is a medical malpractice case against a physician, a hospital, and a healthcare insurance provider. Plaintiffs Steven and Michelle Bauman ("Plaintiffs") filed the above-captioned negligence action in the Superior Court of New Jersey, Law Division, Camden County. Defendant U.S. Healthcare, Inc. ("U.S.Healthcare") removed the action to this Court, asserting federal jurisdiction based on Section 502(a)(1)(B) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) ("Section 502(a)").

Presently before this Court is defendant U.S. Healthcare's Motion to Dismiss or, in the Alternative, for Summary Judgment. Plaintiffs counter with a Motion for Remand to New Jersey State Court in which they challenge the applicability of Section 502(a) to the present action and contend that removal was inappropriate. Plaintiffs also seek reimbursement of attorney's fees associated with their motion pursuant to 28 U.S.C. § 1447(c).

## I. BACKGROUND

Michelina Bauman ("Michelina") was born on May 16, 1995. She and her mother were discharged from the hospital twenty-four hours later. Michelina died on May 18, 1995, the day following her discharge. Plaintiffs contend that she died from a virulent infection that went undiagnosed and developed into meningitis.

Defendant Kennedy Hospital is the health care facility at which she was born. Defendant Kamilah Nemeh, M.D. ("Dr.Nemeh") was the discharging physician at Kennedy Hospital. Defendant U.S. Healthcare is a Pennsylvania corporation which wholly owns a subsidiary corporation known as The Health Maintenance Organization of New Jersey, Inc. ("HMO–NJ"). HMO–NJ is a health maintenance organization that furnishes employee health care benefit benefits to plan participants, including Plaintiffs, pursuant to employee benefit plans established under ERISA.

On May 12, 1997, Plaintiffs filed its Complaint. The counts involving U.S. Healthcare can be summarized as follows:

Count One alleges that U.S. Healthcare acted negligently in adopting a policy that "encouraged, pressured, and/or directly or indirectly required that its participating physicians discharge newborn infants and their mothers from the hospital within 24 hours of the infant's birth."

Count One also alleges that U.S. Healthcare is vicariously liable for the negligent actions of its agents Dr. Nemeh and Kennedy Hospital in discharging Michelina Bauman from the hospital after only 24 hours.

Count Two alleges that U.S. Healthcare acted recklessly indifferent to the health consequences of its policy "governing discharge of mothers and newborns from the hospital within 24 hours of birth knowing, among other things, that many infants would be at risk for developing life-threatening disease after leaving the hospital and that these guidelines would result in life-threatening delays in the diagnosis and treatment of these diseases."

Count Five alleges that U.S. Healthcare acted negligently in (1) "adopting policies with respect to hospital utilization by its participating physicians that discouraged these physicians from re-admitting infants to the hospital when health problems were identified subsequent to the newborns original discharge from the hospital" and in (2) "failing to exercise due care in the selection, supervision, training, and/or monitoring of Dr. Nemeh as a participating provider of health services."

Count Six alleges that U.S. Healthcare acted negligently in "not providing for [an in-home] visit by a participating provider despite assurances under its L'il Appleseed Program that such a visit would be provided and despite a telephone call ... from the Baumans requesting this service." [1]

On June 12, 1997, U.S. Healthcare removed this case to federal court. It then moved to dismiss the Complaint pursuant to Section 514(a) of ERISA, 29 U.S.C. § 1144(a), or, in the alternative, for summary judgment. Plaintiffs have responded by moving to remand this action to state court for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c) (Supp.1996).

## II. DISCUSSION

### A. PLAINTIFFS' MOTION TO REMAND

Defendants removed this action on the grounds that Section 502(a) and the "complete preemption" exception to the "well-pleaded complaint rule" provided this Court with subject matter jurisdiction. Plaintiffs,

however, challenge the propriety of this removal by asserting that Section 502(a) does not govern this action. They argue that this Court should remand the action to state court for lack of subject matter jurisdiction. As a result, this Court must review the complaint, the petition for removal, the statutes pursuant to which U.S. Healthcare removed the claim, and the relevant case law to determine whether, indeed, this court maintains subject matter jurisdiction over the action.

### 1. "Complete Preemption"

The jurisdictional principles governing removal are well established. "The threshold requirement is that the complaint must fall within the 'original jurisdiction' of the federal district court." *Lancaster v. Kaiser Found. Health Plan of Mid–Atlantic States, Inc.*, 958 F.Supp. 1137, 1142 (E.D.Va. 1997) (citing 28 U.S.C. § 1441(a)). Where, as here, there is no diversity of citizenship between the parties, removal is proper only if federal question jurisdiction exists. *Id.* Whether federal question jurisdiction exists is determined by application of the "well-pleaded complaint rule." *Id.* Under this rule, federal question jurisdiction exists when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

There is, however, an exception to the "well-pleaded complaint rule"—the "complete preemption" exception. Under this exception, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 354 (3d Cir. 1995) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In the ERISA context, the Supreme Court has determined that the complete preemption exception supports removal of state causes of action that fit within the scope of Section 502(a). *Id.* Therefore, to determine whether U.S. Healthcare properly

---

1. Count Six also alleges that Kennedy Hospital acted negligently in "failing to timely notify U.S. Healthcare of Michelina's birth so such a visit could be arranged and/or failing to otherwise secure arrangements for such a visit prior to discharging Michelina from the hospital."

removed this action to federal court, this Court must determine whether any of Plaintiffs' claims fit within the scope of Section 502(a).

## 2. Scope of Section 502(a)

The United States Court of Appeals for the Third Circuit construed Section 502(a) and determined whether certain state law claims for medical malpractice fit within its scope in *Dukes v. United States Healthcare, Inc.*, 57 F.3d 350 (3d Cir.1995). According to *Dukes*, the determination is an exercise of statutory construction beginning with "the text of the provision in question, and mov[ing] on, as need be, to the structure and purpose of the Act in which it occurs." 57 F.3d at 357 (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). This Court now proceeds to a statutory construction analysis of each of Plaintiff's claims upon which U.S. Healthcare based federal removal jurisdiction.

## 3. Counts One, Two, and Five

U.S. Healthcare bases federal removal jurisdiction on Counts One, Two, and Five of Plaintiffs' Complaint. Count One alleges that U.S. Healthcare acted negligently in adopting a policy that "encouraged, pressured, and/or directly or indirectly required that its participating physicians discharge newborn infants and their mothers from the hospital within 24 hours of the infant's birth." Count Two alleges that U.S. Healthcare acted recklessly indifferent to the health consequences of its policy "governing discharge of mothers and newborns from the hospital within 24 hours of birth knowing, among other things, that many infants would be at risk for developing life-threatening disease after leaving the hospital and that these guidelines would result in life-threatening delays in the diagnosis and treatment of these diseases." Count Five alleges that U.S. Healthcare acted negligently in "adopting policies with respect to hospital utilization by its participating physicians that discouraged these physicians from re-admitting infants to the hospital when health problems were identified subsequent to the newborns original discharge from the hospital." Because of the uniqueness of these claims, this Court will conduct its own statutory construction analysis to determine whether any fit within the scope of Section 502(a).

■ The plain meaning of the text of Section 502(a) does not cover the three counts. Section 502(a) covers claims "to recover benefits due ... under the terms of [the] plan." 29 U.S.C. § 1132(a)(1)(B).[2] Such a claim "is concerned exclusively with whether or not the benefits due under the plan were actually provided." *Dukes*, 57 F.3d at 357. Each of the counts at issue seeks to hold U.S. Healthcare accountable for adopting policies that cause its participating physicians to provide inadequate medical care to their patients. The focus of these counts is on the quality of care provided by the physician and the impact of U.S. Healthcare's policies on that quality of care. The focus is not "exclusively" on whether U.S. Healthcare provided Plaintiffs with benefits due under the plan.[3] Therefore, this Court finds that the plain meaning of the text of Section 502(a) does not cover the three counts.[4]

Even if some ambiguity exists about whether the plain meaning of the text of

---

2. Section 502(a) also covers claims are "to enforce ... rights under the terms of the plan[ ] or to clarify ... rights to future benefits under the terms of the plan." These claims are not at issue in this case.

3. In fact, Plaintiffs state in their Memorandum of Law that "[t]he plan provided for 24 hours stay in the hospital and [Plaintiffs] received this 'benefit.' " They further state in their Reply Memorandum that they "do not claim that Michelina was entitled to more than 24 hours under the plan and that she was refused this service."

4. This Court will refrain from engaging in an analysis that focuses on whether Plaintiffs' claims attack the "quantity of benefits" received versus the "quality of benefits" received. It finds that such an analysis has limited applicability to the facts of this case. *See Dukes*, 57 F.3d at 358 (recognizing that "the distinction between quantity of benefits due under a welfare plan and the quality of those benefits will not always be clear in situations ... where the benefit contracted for is health care services rather than money to pay for such services").

Section 502(a) covers the three counts, however, the legislative history, structure, and purpose of ERISA also support the conclusion that the counts do not fit within the scope of the section 502(a). The legislative history, structure, and purpose of ERISA suggest that:

> [w]hen Congress enacted [the Act] it was concerned in large part with the various mechanisms and institutions involved in the funding and payment of plan benefits. That is, Congress was concerned "that owing to the inadequacy of current minimum [financial and administrative] standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered." § 2, 29 U.S.C. § 1001(a). Thus, Congress sought to assure that promised benefits would be available when plan participants had need of them and § 502 was intended to provide each individual participant with a remedy

in the event that promises made by the plan were not kept.

*Dukes,* 57 F.3d at 357. Plaintiffs do not seek a remedy for U.S. Healthcare's failure to provide the benefits promised by its plan. Instead, they seek a remedy for the damage caused by U.S. Healthcare's negligence in the way that it structured its plan—a structure that allegedly led participating physicians to render inadequate medical care to plan beneficiaries. There is no evidence that Congress intended Section 502 to provide this remedy as well.

Both sides have cited what appear to be conflicting cases to support their respective positions.[5] As discussed above, this Court has chosen to apply its own statutory construction analysis. Having done so, it concludes that Counts One, Two, and Five of Plaintiffs' Complaint do not fit within the scope of the section 502(a).[6] Accordingly,

---

5. In support of its argument that Plaintiffs' claims in Counts One, Two, and Five fit within the scope of Section 502(a), U.S. Healthcare cites *Lancaster v. Kaiser Found. Health Plan of Mid–Atlantic States, Inc.,* 958 F.Supp. 1137, 1142 (E.D.Va.1997). In *Lancaster,* Lancaster alleged a claim against her HMO "for the establishment of guidelines and cost standards which worked against the full and prompt diagnostic assessment [of Lancaster's brain tumor] within the accepted standard of care and for its failure to establish policies, protocols, guidelines and standards for an adequate diagnostic assessment and treatment of [Lancaster's] continuing headaches." *Id.* at 1141. The court held that the claim fit within the scope of Section 502(a) because it "challenge[d] an administrative decision that has the effect of denying benefits." *Id.* at 1147. It reasoned that "[n]otwithstanding plaintiffs' characterizations to the contrary, the gravamen of these claims is that [the HMO] purposefully established and implemented an administrative policy that had the effect of inducing [plaintiff's doctors] to deny benefits to Lancaster, thereby causing her injuries." *Id.* at 1146.

In response to U.S. Healthcare's argument, Plaintiffs cite *Ouellette v. Christ Hospital,* 942 F.Supp. 1160 (S.D.Ohio.1996). In *Ouellette,* the plaintiff alleged that her HMO breached its duty to her by "limiting the hospital stays of its subscribers and enforcing those limitations by an unreasonable system of financial incentives to hospitals." *Id.* at 1163–64. First, the court noted that the claim focused on the relationship between the hospital and the HMO rather than the plaintiff and the HMO. *Id.* at 1165. Next, it

found that the plaintiffs claim was "not challenging the amount of benefits but the quality of service she received." *Id.* The court, therefore, held that the claim was not completely preempted by ERISA, reasoning that "[s]uch a claim is separate and distinct from a claim for benefits under a plan." *Id.*

6. This Court also notes that the United States Court of Appeals for the Seventh Circuit has derived a three factor test for determining whether a claim is within the scope of Section 502(a):

> (1) whether the "plaintiff is eligible to bring a claim under that section; (2) whether the plaintiff's "cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via [Section] 502(a);" and (3) whether the plaintiff's "state law claim cannot be resolved without an interpretation of the contract governed by federal law."

*Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir.1996) (citations omitted) (quoting *Rice v. Panchal* 65 F.3d 637, 641, 644 (7th Cir.1995)). A heavy focus of the test is on the third factor and whether a plaintiff's state law claim "rests upon the terms of the plan or the 'resolution of the [plaintiff's] state law claim ... require[s] construing [the ERISA plan].'" *Rice v. Panchal,* 65 F.3d 637, 644–45 (7th Cir. 1995) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)). This Court finds that Plaintiffs claims do not rest upon the terms of their plan, nor do they require this Court to construe the terms of the plan. Therefore, this Court would reach the same conclusion if it applied the Seventh Circuit's test.

none of these claims provides an appropriate basis for federal removal jurisdiction.

### 4. Count Six

■ U.S. Healthcare also bases federal removal jurisdiction on Count Six of Plaintiffs' Complaint. Count Six alleges that U.S. Healthcare acted negligently in "not providing for [an in-home] visit by a participating provider despite assurances under its L'il Appleseed Program that such a visit would be provided and despite a telephone call . . . from the Baumans requesting this service."

Count Six states a claim that fits within the scope of Section 502(a). Courts have held that claims against an insurer for its negligence in failing to provide a benefit due under a plan fit within the scope of Section 502(a). *See Dukes,* 57 F.3d at 360 (discussing *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321 (5th Cir.1992)); *Lazorko v. Pennsylvania Hosp.,* No. Civ.A. 96–4858 (E.D.Pa. March 31, 1997). Count Six alleges that U.S. Healthcare was negligent in not providing an "in-home visit" by a participating physician, a benefit that Plaintiffs claim they asked for and were entitled to under their plan. Distilled to its essence, the count states a claim against U.S. Healthcare for its negligence in failing to provide a benefit due under the plan and fits within the scope of Section 502(a).

Since Count Six fits within the scope of Section 502(a), removal of the Complaint was proper. This Court must deny Plaintiffs' Motion for Remand to New Jersey State Court pursuant to § 1447(c).[7] It will now consider U.S. Healthcare's Motion to Dismiss.

### B. U.S. HEALTHCARE'S MOTION TO DISMISS

The ERISA preemption defense stems from the ERISA preemption clause, Section 514(a). That clause sets forth that its provisions "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.

§ 1144(a). "It is important to recognize that the jurisdictional doctrine of complete preemption differs from the federal defense of ERISA preemption." *Lancaster,* 958 F.Supp. at 1144. "The difference between complete preemption under [Section] 502(a) and [ERISA] preemption under [Section] 514(a) is important because complete preemption is an exception to the well-pleaded complaint rule that has jurisdictional consequences." *Rice v. Panchal,* 65 F.3d 637, 640 (7th Cir.1995) (citing *Lister v. Stark,* 890 F.2d 941, 943 (7th Cir.1989)). State law claims that are subject to ERISA preemption under Section 514(a) "are not recharacterized as claims arising under federal law," rather, "the federal law serves as a defense to the state law claim." *Id.*

■ Despite the differences between complete preemption under Section 502(a) and ERISA preemption under Section 514(a), each preemption doctrine does not exist independently of the other. Specifically, courts have held that "[w]here a claim is completely preempted under [Section] 502(a) it is necessarily preempted under [Section] 514(a)." *Rice,* 65 F.3d at 646 n. 10; *see also Lancaster,* 958 F.Supp. at 1150 ("Claims completely preempted under [Section 502(a) ] are, a fortiori, preempted under [Section] 514(a)."). This Court has already found that Count Six is completely preempted under Section 502(a). It is, therefore, also preempted under Section 514(a) and must be dismissed.

### C. REMANDING THE REMAINDER OF THE ACTION

■ This Court will remand the remainder of this action to state court, including Plaintiffs' remaining pendent state-law claims against U.S. Healthcare. "[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). "The discretion to remand en-

---

7. In conjunction with their Motion for Remand to New Jersey State Court, Plaintiffs seek reimbursement from U.S. Healthcare for attorney's fees incurred in filing the Motion pursuant to § 1447(c). Since this Court will deny the Motion, however, Plaintiffs are not entitled to attorney's fees.

ables district courts to deal with cases involving pendent claims in a manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.* Having dismissed Count Six, this Court finds that it lacks subject matter jurisdiction over the remaining claims against U.S. Healthcare. Given that (1) the action is still in its early stages and there is no evidence that any of the parties will be prejudiced by remanding the action to state court and that (2) the claim that was the basis for removal was a relatively minor claim and only one of several claims that Plaintiffs asserted against U.S. Healthcare, this Court finds that it is proper to remand the remainder of the action to state court.

### III. CONCLUSION

For the reasons stated above, this Court finds that removal was proper and denies Plaintiffs' Motion for Remand to New Jersey State Court and request to assess counsel fees pursuant to 28 U.S.C. § 1447(c). Furthermore, it will dismiss Count Six since it is preempted by Section 514(a) of ERISA. Finally, since the only basis for subject matter jurisdiction has now been dismissed, this Court will enter an appropriate order remanding the remainder of the case to the Superior Court of New Jersey, Law Division, Camden County.

### AMENDED ORDER

**THIS MATTER** having come before this Court on defendant U.S. Healthcare, Inc.'s ("U.S.Healthcare") Motion to Dismiss or, in the Alternative, for Summary Judgment and plaintiffs Steven and Michelle Bauman's ("Plaintiffs") Motion for Remand to New Jersey State Court pursuant to 28 U.S.C. § 1447(c);

The Court having reviewed the record and the submissions of the parties;

For the reasons set forth in the Court's opinion of this date;

**IT IS** this 1st day of April, 1998 **HEREBY**

**ORDERED** that Plaintiff's Motion for Remand to New Jersey State Court pursuant to 28 U.S.C. § 1447(c) is **DENIED;** and it is further

**ORDERED** that Plaintiff's request for assessment of attorney's fees is also **DENIED;** and it is further

**ORDERED** that U.S. Healthcare's Motion to Dismiss or, in the Alternative, for Summary Judgment is **GRANTED** in part, and **COUNT SIX** of Plaintiffs' Complaint is **DISMISSED** *as to U.S. Healthcare only;* and it is further

**ORDERED** that **COUNTS ONE, TWO, THREE, FOUR, FIVE, SEVEN, and EIGHT** of Plaintiffs' Complaint are remanded to the Superior Court of New Jersey, Law Division, Camden County.

No costs.