Chloe STEWART, et al., Plaintiffs,

v.

BERRY FAMILY HEALTH CENTER, et al., Defendants.

No. C–3–99–146.

United States District Court,
S.D. Ohio,
Western Division.

March 7, 2000.

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION FOR REMAND (DOC. # 9–1); PLAINTIFFS' MOTION FOR ATTORNEY FEES OVERRULED (DOC. # 9–2); THE MOTION OF DEFENDANT COMMUNITY INSURANCE COMPANY FOR JUDGMENT ON THE PLEADINGS (DOC. # 18–1) AND ITS MOTION FOR SUMMARY JUDGMENT (DOC. # 18–2) OVERRULED AS MOOT; CAPTIONED CAUSED REMANDED TO MONTGOMERY COUNTY COURT OF COMMON PLEAS FROM WHENCE IT COMETH; TERMINATION ENTRY

RICE, Chief Judge.

On February 26, 1999, Plaintiffs Chloe Stewart and Deaira Easley filed this action in the Montgomery County Court of Common Pleas against Defendants Miami Valley Hospital ("MVH"); Berry Family Health Center ("Berry"), a unit of Miami Valley Hospital; Dr. Michael Williams; Dr. Kerri Williams; Community Insurance Company, providing health care benefits as Anthem Blue Cross/Blue Shield ("Anthem"); and various John Does, alleging that the Defendants' actions resulted in the failure to diagnose and treat Chloe Stewart's life threatening condition, prior to September 16, 1997.[1] On April 2, 1999,

---

1. In the Complaint, Plaintiffs indicate that certain events occurred in 1997, while others

Anthem removed the action to this Court, alleging that the allegations against it, set forth in Count Six of the Complaint,[2] is preempted by § 1144(a) of the Employee Retirement Income and Security Act ("ERISA"), that 29 U.S.C. § 1132(e) and (f) grant jurisdiction to this Court, and that the action contains a separate and independent federal claim against Anthem, as defined in 28 U.S.C. § 1441(c), which allows for removal of the entire case by Anthem alone.

Pending before the Court is Plaintiffs' Motion to Remand (Doc. # 9–1), and their Motion for Attorney Fees, pursuant to 28 U.S.C. § 1447(c) (Doc. # 9–2). Also pending before the Court is Anthem's Motion for Judgment on the Pleadings (Doc. # 18–1) or, in the alternative, for Summary Judgment (Doc. # 18–2). For the reasons assigned, Plaintiffs' Motion to Remand (Doc. # 9–1) is SUSTAINED, and their Motion for Attorney Fees (Doc. # 9–2) is OVERRULED. Defendant Anthem's Motions (Doc. # 18–1, Doc. # 18–2) are OVERRULED as MOOT.

I. *Plaintiffs' Motion for Remand (Doc. # 9–1)*

■■■ The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). This is no less true where, as here, it is the defendant, rather than the plaintiff, who seeks the federal forum. *E.g., Ahearn v. Charter Twp. of Bloomfield,* 100 F.3d 451, 453–54 (6th Cir.1996). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn,* 532 F.2d 554, 560 (6th Cir.1976). The removing defendant's bur-

den is to prove, by a preponderance of the evidence, that the jurisdictional facts it alleges are true. *Gafford v. General Electric Co.,* 997 F.2d 150, 158 (6th Cir.1993). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

■■■ In determining whether Defendant's removal to federal court is appropriate, the Court must examine Plaintiffs' well-pleaded complaint. A case arises under federal law when "plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The "well-pleaded complaint rule" provides that "the plaintiff is the master of the complaint, that [for removal to be proper] a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Warner v. Ford Motor Co.,* 46 F.3d 531, 533 (6th Cir.1995). If Plaintiffs' claim arises under state law, the mere assertion of federal preemption as a defensive argument will not confer federal question subject matter jurisdiction. As stated by the Supreme Court in *Metropolitan Life Ins. Co. v. Taylor,*

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the

occurred in 1999. The Court assumes that the dates using the year 1999 are typographical errors, and that all of the conduct giving rise to this lawsuit occurred in 1997.

**2.** Count Six is the only count that could arguably vest this Court with subject matter juris-

diction. Counts One through Five set forth claims for negligence, loss of consortium, reliance, and vicarious liability. Moreover, Anthem is not a Defendant as to Counts One through Five of Plaintiffs' Complaint. Accordingly, those claims will not be discussed.

case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

*Id.* at 63–64, 107 S.Ct. 1542.

The Supreme Court has found that Congress intended to make causes of action within the scope of 29 U.S.C. § 1132(a)(1)(B), which allows plan participants or beneficiaries to bring a civil action to recover benefits due to him under the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan, removable to federal court under the doctrine of complete preemption. *Id.* at 66, 107 S.Ct. 1542. However, causes of action which raise conflict preemption are not removable.

> The [Supreme] Court specifically stated "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life,* at 54, 107 S.Ct. at 1547. Section 1144 falls precisely into this category. It allows ERISA to preempt state laws when they "relate to" matters governed by ERISA but does not create a federal cause of action for matters which only "relate to" ERISA's field of concern. Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144.

*Warner,* 46 F.3d at 534. Accordingly, this Court must determine whether Plaintiffs have raised a claim within the scope of section 1132(a)(1)(B), which is completely preempted by ERISA, or whether Anthem's arguments are merely assertions of conflict preemption, which cannot form the basis for removal.

At the outset, the Court notes that Defendant's Notice of Removal is facially defective. It states that Plaintiffs' claim against it is preempted by § 1144(a) of ERISA, not § 1132(a)(1)(B). As stated above, the Sixth Circuit has stated that no removal jurisdiction exists under § 1144. *Warner, supra.* Accordingly, the Notice of Removal does not properly state a basis for this Court's subject matter jurisdiction. However, because the Court may permit a Defendant to cure defective allegations in its Notice of Removal, *see Tech Hills Assoc. v. Phoenix Home Life Mutual Ins. Co.,* 5 F.3d 963, 969 (6th Cir.1993), the Court will address whether Count Six of Plaintiffs' Complaint sets forth a claim under federal law.

Count Six of Plaintiffs' Complaint states, in pertinent part:

> 57. Defendant, Anthem Blue Cross Blue Shield, limited the hospital stay of Chloe Stewart.
>
> 58. Upon information and belief, defendant, Miami Valley Hospital, received a financial incentive for its discharge of Chloe Stewart on September 10th, 1997.
>
> 59. Upon information and belief, defendant, Anthem Blue Cross Blue Shield's unreasonable financial incentives were a substantial factor in bringing about harm to Chloe Stewart.
>
> 60. Upon information and belief, defendant, Anthem Blue Cross Blue Shield's financial incentives and cost control systems were the direct and proximate cause of the harm incurred by Chloe Stewart.

Complaint ¶¶ 57–60. Plaintiffs assert that these allegations set forth a claim against Anthem for negligence based on Defendant's financial and contractual relations with a third-party health care provider, namely MVH. They argue that such claims are not preempted and are not removable. Defendant responds that claims asserting that financial incentive programs affected decisions regarding payments of medical benefits constitute claims for benefits under § 1132(a)(1)(B). As stated by Defendant, it asserts that Plaintiff "is claiming that she was entitled to continue her hospitalization, but as a result of Anthem's alleged actions—either in conducting a utilization review which determined that further hospitalization was not neces-

sary, or as a result of a financial-incentive program which caused the treating physicians to discharge her prematurely—she did not receive the benefit of further paid hospitalization which she claims was a benefit she was entitled to under the Plan."[3] (Doc. #19 at 11–12) Thus, Anthem argues, Plaintiffs' claim is, in essence, one for benefits, which is completely preempted by ERISA.

Because of the subtle differences in the case law regarding suits against health plans, the proper characterization of Count Six of Plaintiffs' Complaint is highly important. *First,* the Court notes that Plaintiffs have not asserted that Anthem is liable for negligence on the theory of respondeat superior or vicarious liability. In other words, Plaintiffs have not alleged that Anthem is indirectly liable for the medical malpractice of Chloe Stewart's physicians. Rather, they have asserted that Anthem's independent actions constituted negligence. *Second,* the Court notes that Plaintiffs do not allege that Stewart was injured by a determination of an Anthem utilization review procedure. Rather, she asserts that Anthem's use of financial incentives, and the receipt of such an incentive by MVH, caused her injury. Accordingly, Plaintiffs' well-pleaded complaint appears to assert that Anthem has committed negligence by instituting financial incentives which induced medical malpractice by her health care providers.[4]

In light of the allegations set forth in Plaintiffs' Complaint, Stewart's claim is distinguishable from that in *Tolton v. American Biodyne, Inc.,* 48 F.3d 937 (6th Cir.1995), and similar cases.[5] In *Tolton,*

---

**3.** In their Reply Memorandum (Doc. #26), Plaintiffs provide a helpful summary of the cost containment methods used by health maintenance organizations ("HMO"). In essence, utilization reviews are evaluations based on established clinical criteria to evaluate the appropriateness of prescribed medical care. Utilization reviews may occur prospectively, concurrently, or retroactive to the recommended test, procedure, referral, or treatment. Utilization reviews are performed to determine whether the recommended action is covered under the plan. *See Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 352 n. 1 (3d Cir.1995); *Corcoran v. United HealthCare Inc.,* 965 F.2d 1321, 1323 (5th Cir.1992).

Another method of cost containment is the use of financial incentives. With this method, plan administrators or health care providers are given financial incentives to limit the use of more costly treatment or referrals to specialists. "[M]any sponsors and beneficiaries of managed care plans view financial incentives as a desirable way of conserving the plan's assets by encouraging physicians to use resources more efficiently." *Herdrich v. Pegram,* 154 F.3d 362, 382–83 (7th Cir.1998)(dissent).

**4.** Plaintiffs acknowledge that they are not challenging Anthem's decision to limit her hospital stay (see Doc. #26 at 10), or Anthem's utilization management program or any other decision, mechanism for deciding, or administrative procedure on the part of Anthem to extend or deny health-care benefits to Stewart (Doc. #9 at 5).

**5.** The essence of each of these cases is that the injury suffered could have been avoided if the appropriate care had been authorized by the plan. Most notably, the parties discuss *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321 (5th Cir.1992). In *Corcoran,* a plan participant's obstetrician had recommended that the plaintiff be hospitalized to receive constant monitoring of her unborn child. United Healthcare performed a utilization review for the plan, and based upon that review, denied authorization for hospitalization. Instead, it authorized ten hours per day of home nursing care. During a period of time when no nurse was on duty, the fetus went into distress and died. The Corcorans brought a wrongful death of an unborn child action against the provider of utilization review services. The Fifth Circuit held that the Corcorans' claims were preempted by ERISA under § 1144, because they were attempting to recover for a tort allegedly committed in the course of handling a benefit determination.

*See, e.g., Hull v. Fallon,* 188 F.3d 939 (8th Cir.1999)(plan administrator refused to authorize thallium stress test but authorized treadmill stress test; claim against plan administrator and plan, alleging that failure to authorize thallium stress test caused myocardial infarction and additional heart disease, was completely preempted); *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482 (7th Cir.1996); *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1 (1st Cir.1999)(suit against insurer and utilization review firm for negligence based on failure to place beneficiary in requested psychiatric facility).

co-administrators of a deceased mental patient's estate alleged that the managed care plan negligently refused benefits pursuant to utilization review. As a result of the denial of benefits, the decedent had committed suicide. The Sixth Circuit held that the plaintiffs' claim arose from an allegedly improper denial of benefits to an ERISA beneficiary, which "falls squarely within section [1132(a) ]." In the present case, Stewart does not contest Anthem's determination that discharge from MVH was warranted, *i.e.,* the quantity of benefits that she received. Thus, unlike *Tolton,* she does not assert a claim for wrongful denial of benefits. Rather, she focuses on the relationship between Anthem and the health care providers, asserting that Anthem's financial incentives affected the standard of care that she received from the other Defendants. Accordingly, *Tolton,* and the cases cited by the parties that are analogous to it, are inapposite.

In *Dukes v. U.S. Healthcare,* 57 F.3d 350 (3d Cir.1995), the Third Circuit set forth a standard for determining whether a negligence claim against a plan provider fell within the civil enforcement provision of ERISA, § 1132(a)(1)(B). *Dukes* involved two cases that had been consolidated on appeal. In both cases, the plaintiffs sought to hold their HMO liable for the negligence of the physicians, under agency theories, and for its negligent selection, employment and monitoring of the medical personnel. The HMOs removed the cases to federal court, claiming federal preemption under ERISA, and the plaintiffs moved to remand.

In concluding that remand was proper, the *Dukes* court distinguished between state law claims directed to the quality of the benefits provided and those asserting that the plan erroneously withheld benefits due. *See id.* at 357–58, 60–61. The court acknowledged that, in some cases, it may be difficult to distinguish between claims challenging the quality of benefits rather than their quantity, because the same HMO may have assumed both the role as a plan administrator and the separate role as a provider of medical services. Claims that fall within the administrator's activities would fall within § 1132(a)(1)(B) and be completely preempted. On the other hand, claims arising from an HMO acting as a health care provider (*i.e.,* by arranging or providing medical treatment, either directly or through contracts with hospitals, doctors, or nurses) would fall outside of § 1132(a)(1)(B). *Id.* Applying those distinctions, the *Dukes* court held that the plaintiffs' vicarious liability and negligence claims were directed to the quality of the benefits they had received, and were not completely preempted.

Using the standard set forth in *Dukes,* a number of courts have held that claims alleging the existence of financial incentives that discourage physicians from providing medically appropriate care do not constitute claims under § 1132(a)(1)(B). Most recently, in *In re U.S. Healthcare, Inc.,* 193 F.3d 151 (3d Cir.1999), the Third Circuit addressed whether a claim that the plan was "negligent in adopting hospital utilization policies ... that discouraged ... physicians from readmitting infants to the hospital when health problems were identified subsequent to [their] discharge from the hospital" was completely preempted. The court stated that the claim "raise[d] the qualify-of-care consequences of the pre-certification policy." *Id.* at 164. It therefore affirmed the district court's determination that the claim was not completely preempted by ERISA. *See also DeLucia v. St. Luke's Hosp.,* 1999 WL 387211 at *4 (E.D.Pa. May 25, 1999)(stating that plaintiffs' claim that Aetna's disincentive policy had the effect of discouraging doctors from providing complete and .proper care was not completely preempted).

In *Ouellette v. Christ Hosp.,* 942 F.Supp. 1160 (S.D.Ohio 1996)(Spiegel, J.), the court also found that a claim similar to that in Count Six of Plaintiffs' Complaint was not completely preempted. Therein, the plaintiff's health insurance provider, Choice-Care, limited the hospital stay for removal of ovaries to two days. Although the

plaintiff began to experience complications, she was discharged in accordance with the policy.[6] The plaintiff alleged medical malpractice by hospital personnel and that ChoiceCare's financial relationship with the hospital caused that malpractice.

The *Ouellette* court adopted a two-part test, established by the Seventh Circuit, for determining whether a claim falls within § 1132(a)(1)(B).[7] Under that test, a claim falls within ERISA's civil enforcement provision when the claim rests upon the terms of the plan or the resolution of plaintiff's claim requires construing the ERISA plan. *Id.* at 1164. In concluding that the plaintiff's claim did not rest upon the terms of the plan, the court, using language similar to that in *Dukes*, stated:

> Ms. Ouellette's claim against ChoiceCare focuses upon the relationship between ChoiceCare and The Christ Hospital, not between her and ChoiceCare. Ms. Ouellette is not challenging the amount of benefits but the quality of the service she received. She asserts that Choice-Care maintains financial incentives with its providers the effect of which undermine the quality of care provided by the providers. Such a claim is separate and distinct from a claim for benefits under a plan.

*Id.* at 1165. The *Ouellette* court further concluded that construction of the plan was not required, stating:

> Likewise, Ms. Ouellette's claim that ChoiceCare's financial arrangements with The Christ Hospital caused the hospital to commit malpractice will not require review of ChoiceCare's utilization review or otherwise demand construction of the ChoiceCare plan. Thus, we find that a claim that the hospital acted negligently due to its relationship

with an HMO is not a suit to "enforce rights under the terms of a plan."

*Id.*

As noted by Anthem, one court applying the *Dukes* test has determined that a claim for negligently establishing an incentive program, which induced the plaintiff's physicians not to order additional testing, constituted a claim for benefits. *Lancaster v. Kaiser Foundation Health Plan,* 958 F.Supp. 1137 (E.D.Va.1997). In discussing that claim and one for fraudulently concealing the incentive program's existence, the *Lancaster* court stated:

> The direct negligence claim and the fraud claim ... attack an administrative decision, not a medical one. Properly construed, these claims focus on Kaiser's administrative decision to curb rising health care costs by employing a system of financial incentives that rewarded physicians for not ordering tests or treatments. In other words, [these claims] ... challenge an administrative decision that had the effect of denying benefits to Lancaster as a plan participant because it inappropriately influenced Campbell and Pauls to take certain non-medical factors, most notably, their incomes, into account when prescribing treatment. These claims for direct negligence and fraud against Kaiser trigger [§ 1132(a)(1)(B) ].

*Id.* at 1146–47; *see also Kight v. Kaiser Foundation Health Plan of Mid–Atlantic,* 34 F.Supp.2d 334 (E.D.Va.1999)(construing similar claim as preempted by the Federal Employee Health Benefits Act).

■■■ This Court finds the reasoning of *Dukes, Bauman,* and *Ouellette* to be persuasive and disagrees with that of *Lancaster.* Although the decision to institute a financial incentive program has the poten-

---

6. Anthem argues that the *Ouellette* court improperly construed a utilization review policy as a financial incentive, rendering the case unpersuasive. Although Defendant may be correct in its argument that a utilization review policy was at issue, the Court finds the *Ouellette* court's treatment of claims based on

the financial relationship between the plan and a hospital to be sound.

7. The Seventh Circuit borrowed the test from case law regarding § 301 of the Labor Management Relations Act. *Rice v. Panchal,* 65 F.3d 637 (7th Cir.1995).

tial to impact indirectly the quantity of benefits that plan participants receive, *see Lancaster,* 958 F.Supp. at 1147, that program is not concerned with the relationship between the plan participant and the plan or, more specifically, the benefits to which a plan participant is entitled. Thus, the Court disagrees with the *Lancaster* court that any administrative decision concerning cost containment, and any claim related to that effort, automatically triggers § 1132(a)(1)(B).

▪ Furthermore, Count Six of Plaintiffs' Complaint concerns Anthem's contracts with medical personnel and facilities and the resultant quality of care given to plan participants by those entities. Specifically, Plaintiffs allege that Anthem's financial incentive program impacted the quality of care that she received from her physicians while at MVH. Thus, Plaintiffs' Complaint is more properly characterized as challenging a medical decision to deny proper treatment to a patient rather than an administrative decision to deny benefits. In addition, because Plaintiffs' claim is based on the financial relationship between Anthem and MVH, it does not rest upon the terms of the plan, nor does the Court foresee any reason why the plan would be construed in resolving the claim. Accordingly, the Court concludes that Count Six of Plaintiffs' Complaint does not set forth a claim for benefits under § 1132(a)(1)(B) of ERISA, that it is not completely preempted by ERISA, and that it does not constitute a jurisdictional basis for removal. Plaintiffs' Motion for Remand (Doc. # 9–1) is SUSTAINED.

In ruling that Count Six of Plaintiffs' Complaint is not completely preempted by ERISA, the Court is mindful that Plaintiffs' claim may still be preempted pursuant to § 1144 of ERISA. If such is the case, Plaintiffs' claim is subject to dismissal. *See* 29 U.S.C. § 1132(e)(1)(granting

federal district courts exclusive jurisdiction over claims other than those brought pursuant to § 1132(a)(1)(B) and (a)(7)). That issue, however, is properly left to the state court for resolution.

## II. *Plaintiffs' Motion for Attorney Fees (Doc. # 9–2)*

Along with their Motion for Remand (Doc. # 9–1), Plaintiffs request an award of attorney fees, pursuant to 28 U.S.C. § 1447(c) (Doc. # 9–2). Specifically, Plaintiffs seek $18,196.25,[8] arguing that their Complaint was not removable on its face and that Defendant removed the action after "jumping to conclusions." Anthem responds that attorney fees should not be awarded under § 1447(c), where the defendant removes the action in good faith and upon grounds that are not frivolous. It further argues that its removal of this action was made in good faith, and that Plaintiffs have not suggested any fault or bad faith on Anthem's part. Thus, it asserts that the Court should deny Plaintiffs' request.

▪ 28 U.S.C. § 1447(c) states, in pertinent part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." The decision to award or to deny attorney fees is within the district court's discretion. *Morris v. Bridgestone/Firestone, Inc.,* 985 F.2d 238, 240 (6th Cir.1993); *Ahearn v. Charter Twp. of Bloomfield,* 1998 WL 384558 (6th Cir. June 18, 1998). "A threshold determination of bad faith, improper purpose, or vexatious or wanton conduct [is] not necessary." *Morris,* 985 F.2d at 240; *see Bucary v. Rothrock,* 883 F.2d 447 (6th Cir.1989)(district court may award costs without evidence that removal was frivolous or in bad faith). However, the court is not required to award attorney

---

8. Plaintiffs seek $15,513.75 for the services of Thomas F. Payne, based upon 68.95 hours of work at a rate of $225 per hour. They also seek $2,682.50 for the services of Richard W. Schulte, based upon 18.5 hours of work at a rate of $145 per hour. Upon reviewing Mr. Schulte's invoice, the Court's mathematics indicates 15.3 hours of work, which at a rate of $145 per hour, equals $2218.50.

fees whenever removal is found to be improper. *Ahearn,* 1998 WL 384558 at *2, n. 2. An award of attorney fees is inappropriate "where the defendant's attempt to remove the action was 'fairly supportable', or where there has not been at least some finding of fault with the defendant's decision to remove." *Id.* (internal citations omitted). Conversely, "a court abuses its discretion by refusing to award fees where the defendant's argument for removal was devoid of even fair support." *Id.*

 Defendant's removal, although ultimately found to be improper, was fairly supportable by current case law. The Sixth Circuit has not addressed whether Plaintiffs' claim, *i.e.,* a direct negligence claim against a health plan, based on allegations that its financial incentives to health care providers induced medical malpractice by those providers, falls within the scope of § 1132(a)(1)(B). In addition, as discussed above, those courts which have addressed this issue are not in agreement as to either the means of evaluating the issue or the proper result. Compare *Dukes, supra,* with *Rice, supra,* and *Bauman, supra,* with *Lancaster, supra.* Accordingly, an award of full costs and attorney fees would not be just and proper under the circumstances. *See General Elec. Capital Auto Lease, Inc., v. Mires,* 788 F.Supp. 948, 950 (E.D.Mich. 1992)(award of full costs and attorney fees would be punitive rather than compensatory in nature where removal involved distinction that had never been fully addressed and raised a novel question of interpretation). Plaintiffs' Motion for Attorney Fees, pursuant to 28 U.S.C. § 1447(c), is OVERRULED.

III. *Defendant's Motions for Judgment on the Pleadings (Doc. # 18–1) and for Summary Judgment (Doc. # 18–2)*

The Court having concluded that remand is warranted, Defendant's Motions for Judgment on the Pleadings (Doc. # 18–1) and for Summary Judgment (Doc. # 18–2) are OVERRULED, as MOOT.

For the foregoing reasons, Plaintiffs' Motion for Remand (Doc. # 9–1) is SUSTAINED, and their Motion for Attorney Fees (Doc. # 9–2) is OVERRULED. Defendant's Motion for Judgment on the Pleadings (Doc. # 18–1) and for Summary Judgment (Doc. # 18–2) are OVERRULED, as MOOT. The captioned cause is remanded to the Montgomery County Court of Common Pleas from whence it cometh.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.