

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-1999

# In re: US Healthcare, Inc. (Bauman vs. US Healthcare, Inc. et.al.)

Precedential or Non-Precedential:

Docket 98-5222

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"In re: US Healthcare, Inc. (Bauman vs. US Healthcare, Inc. et.al.)" (1999). *1999 Decisions.* Paper 257.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/257

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 16, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-5222, 98-5262 and 98-5263

In re: U.S. HEALTHCARE, INC.,
      Petitioner in No. 98-5222

STEVEN BAUMAN, MICHELLE BAUMAN, Individually and
as Administrators ad prosequendum of the Estate of
MICHELINA BAUMAN, deceased

v.

U.S. HEALTHCARE, INC., KENNEDY MEMORIAL
HOSPITAL, Washington Township Division, KAMILA
NEMEH, M.D., JOHN DOES (1-5)

U.S. HEALTHCARE, INC.,
      Appellant in No. 98-5262

STEVEN BAUMAN, MICHELLE BAUMAN, Individually and
as Administrators ad prosequendum of the Estate of
MICHELINA BAUMAN, deceased,
      Appellants in No. 98-5263

v.

U.S. HEALTHCARE, INC., KENNEDY MEMORIAL
HOSPITAL, Washington Township Division, KAMILA
NEMEH, M.D., JOHN DOES (1-5)

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 97-cv-02905)
District Judge: Hon. Stanley S. Brotman

Argued: April 6, 1999

Before: SLOVITER, ALITO and ALARCON,* Circuit Judges

(Filed September 16, 1999)

        Joshua M. Spielberg (Argued)
        Tomar, Simonoff, Adourian, O'Brien,
         Kaplan, Jacoby & Graziano
        Cherry Hill, N.J. 08034

         Attorney for Respondents in No.
98-5222, Appellees in No. 98-5262

        Burt M. Rublin (Argued)
        Ballard, Spahr, Andrews & Ingersoll
        Philadelphia, PA 19103

        Howard J. Bashman
        Richard M. Simins
        Montgomery, McCracken, Walker &
         Rhoads
        Philadelphia, PA 19109

        Edward S. Wardell
        Kelley, Wardell & Craig
        Haddonfield, N.J. 08033
         Attorneys for Petitioner in No.
         98-5222, Attorneys for Appellant
         in 98-5262, Appellee in No. 98-
         5263

_____

* Hon. Arthur L. Alarcon, Senior Circuit Judge for the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

2

        Henry L. Solano
         Solicitor of Labor
        Marc I. Machiz
         Associate Solicitor
        Karen L. Handorf
        G. William Scott (Argued)
        United States Department of Labor
        Plan Benefits Security Division
        Washington, D.C. 20003

         Amicus-respondent in No.
         98-5222, Amicus-appellee in No.
         98-5262 & 98-5263

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This case calls upon us to revisit the issue of "complete preemption" under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. S 1132(a), in the context of a lawsuit claiming medical malpractice, a question we last considered in Dukes v. U.S. Healthcare, Inc., 57 F.3d 350 (3d Cir. 1995).

The plaintiffs, Steven and Michelle Bauman, brought suit in a New Jersey state court for damages arising from the death of their newborn daughter, Michelina Bauman. The complaint names as defendants Kamilah Nemeh, M.D. (the pediatrician responsible for the treatment of Michelina); Kennedy Hospital in Washington Township, New Jersey (the hospital where Michelina was born); and The Health Maintenance Organization of New Jersey, Inc., a subsidiary of U.S. Healthcare, Inc. (collectively "the HMO") (the health maintenance organization of which the Baumans were members). The complaint asserts direct tort claims against all three defendants and also alleges vicarious liability on the part of Kennedy Hospital and the HMO.

U.S. Healthcare, joined by the other defendants, filed a removal petition, basing federal jurisdiction on the doctrine of complete preemption under section 502 of ERISA. U.S.

3

Healthcare then moved in the District Court for dismissal or, in the alternative, summary judgment on the ground that all of the Baumans' claims were subject to express preemption under section 514(a) of ERISA. The Baumans moved to remand, arguing that there was no federal jurisdiction over any of their claims. The District Court granted U.S. Healthcare's motion in part, concluding that federal jurisdiction exists over Count Six of the Baumans' complaint by virtue of the complete preemption doctrine. The court further concluded that Count Six was subject to express preemption under ERISA section 514(a) and it therefore dismissed that count. Having dismissed the only count for which it found there was federal jurisdiction, the District Court then declined to exercise supplemental jurisdiction over the remaining counts against U.S. Healthcare and the other defendants and remanded them to state court under 28 U.S.C. S 1367(c)(3).

U.S. Healthcare has filed both a Petition for a Writ of Mandamus and a Notice of Appeal from the District Court's order. The Baumans have cross-appealed the District Court's order dismissing Count Six and denying their motion to remand all their claims to New Jersey state court under 28 U.S.C. S 1447.

I.

Michelle Bauman gave birth to Michelina Bauman at Kennedy Hospital in Washington Township, New Jersey, on May 16, 1995. In accordance with the health care benefits pre-certification provided by the HMO, Dr. Nemeh, an independent health care provider contracting with the HMO, discharged mother and newborn from the hospital after twenty-four hours. On May 18, the day after Michelina was discharged and two days after she was born, the Baumans noticed that Michelina was ill. They made numerous telephone calls to Doctor Nemeh, but she did not advise them to bring Michelina back to the hospital. They also contacted U.S. Healthcare and requested an in-home visit by a pediatric nurse, but no such nurse was provided. Michelina contracted a Group B strep infection that was undiagnosed and untreated. It developed into meningitis and she died that same day.

4

The Baumans' complaint was filed in New Jersey Superior Court, Camden County, in May 1997. We address only the four counts against U.S. Healthcare.[1] In Count One, the Baumans allege that the U.S. Healthcare policy "encouraged, pressured, and/or directly or indirectly required" the twenty-four hour pre-certified discharge used by the doctor and hospital. App. at 16. In implementing this policy, the complaint continues, U.S. Healthcare acted "without adequate consideration" for the policy's medical appropriateness and "without due care for the health and safety" of members and their children. App. at 16. Count One also includes a claim for vicarious liability against U.S. Healthcare for the negligence of its alleged agents Nemeh and Kennedy Hospital in prematurely discharging the newborn after only twenty-four hours while the infection went undiagnosed.

Count Two alleges that Michelina did not receive timely diagnosis and treatment of the deadly infection. The count states that U.S. Healthcare's adoption of the twenty-four-hour pre-certified discharge policy, despite U.S. Healthcare's knowledge that newborns were at risk for developing diseases and that the policy would delay diagnosis and treatment, manifested reckless indifference to the "health consequences of its policy" and was "motivated only by the financial profit" realizable from having to pay for only a single day in hospital. App. at 17.

The Baumans allege in Count Five that U.S. Healthcare negligently adopted "policies with respect to hospital utilization" that discouraged participating physicians from "re-admitting infants to the hospital when health problems" arose after discharge. App. at 20. They also allege that U.S. Healthcare negligently "fail[ed] to exercise due care in the selection, supervision, training, and/or monitoring" of Dr. Nemeh. App. at 20. This count includes both a direct negligence claim and a vicarious liability claim for the failure to diagnose and treat Michelina's infection.

Count Six alleges that in light of the discharge, Michelina's "medically appropriate care" required an in-

_____

1. Neither Nemeh nor Kennedy Hospital is a party to the appeal or the petition for writ of mandamus.

5

home visit by a pediatric nurse to "ensure [her] health and well-being." App. at 21. The Baumans requested such a visit in their May 18 phone call and, according to the complaint, the plan's L'il Appleseed Program assured such visits, which U.S. Healthcare negligently failed to provide in this instance. This count also included negligence claims against the hospital and doctor for their failure to report Michelina's birth to the HMO, which would have supported the request for a pediatric nurse.

On June 12, 1997, U.S. Healthcare removed the action to the District Court for the District of New Jersey on the ground that section 502(a) of ERISA provides federal jurisdiction over the complaint by virtue of the "complete preemption" doctrine. A month later, the Baumans moved to remand the case to state court. While the case was in the District Court, U.S. Healthcare requested dismissal of all four counts or claims against it on the basis of section 514(a) express preemption under ERISA.

The District Court remanded Counts One, Two and Five, but did so pursuant to 28 U.S.C. S 1367(c)(3) rather than under 28 U.S.C. S 1447(c) as the Baumans requested. The court denied the motion to remand Count Six and, as to that count, granted U.S. Healthcare's motion to dismiss.

In its opinion dated March 30, 1998, the District Court explained these rulings as follows: The court held that removal was proper because Count Six states a claim that fits within the scope of section 502(a) of ERISA (covering claims "to recover benefits due" under the terms of the plan), and that therefore it had subject matter jurisdiction under the doctrine of "complete preemption." It held, concomitantly, that Count Six was expressly preempted under section 514(a) of ERISA and should be dismissed. See Bauman v. U.S. Healthcare, Inc., 1 F. Supp. 2d 420, 425 (D.N.J. 1998). However, the District Court held that the other three counts pled against U.S. Healthcare were not completely preempted. Id. at 423-24. It then exercised its discretion and remanded those claims to state court under 28 U.S.C. S 1367(c)(3), reasoning that the case was relatively early in its proceedings and the single dismissed claim providing subject matter jurisdiction was relatively

6

minor among all the claims asserted against U.S. Healthcare. Id. at 426.

On April 1, the District Court amended its original order to state that it dismissed Count Six with respect to U.S. Healthcare only. The remand of the other counts was not changed.

U.S. Healthcare filed a timely notice of appeal as well as a separate petition for a writ of mandamus. The Baumans cross-appealed the court's dismissal of Count Six and denial of their motion to remand under 28 U.S.C.S 1447(c). This court referred the petition for a writ of mandamus to a merits panel and directed a consolidated briefing schedule for the appeal, cross-appeal, and petition. Additionally, we granted the motion of the Secretary of Labor to file a brief as amicus curiae in support of the Baumans.

II.

We must first consider our jurisdiction to hear this case. See Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 228–29 (3d Cir. 1998). The District Court held that there was federal subject matter jurisdiction pursuant to 28 U.S.C. S 1331 after removal, based on its ruling that Count Six was completely preempted under ERISA; it also ruled that it therefore had supplemental jurisdiction under 28 U.S.C. S 1367(a) over the remaining state law counts. Before we consider the District Court's subject matter jurisdiction, we must decide whether we have appellate jurisdiction. This, in turn, depends on whether the District Court's amended order dismissing Count Six and remanding the case to state court is a final decision, or, if not, whether we should exercise mandamus jurisdiction.

A.

In the original order dated March 31, 1998, the District Court stated, inter alia, that "U.S. Healthcare's Motion to Dismiss or, in the Alternative, for Summary Judgment is granted in part, and Count Six of Plaintiff's Complaint is dismissed." App. at 171. The court proceeded to remand

Counts One through Five, Seven, and Eight to the state court. In the order amended on April 1, the District Court modified only the dismissal of Count Six, stating that "Plaintiff's Complaint is dismissed as to U.S. Healthcare only." Bauman, 1 F. Supp. 2d at 426 (the"Amended Order").2

However, the District Court's opinion expressly set forth its intention to dispose of the entire case. See id. ("[T]his Court finds that it is proper to remand the remainder of this action to state court." (emphasis added)). In the conclusion of its opinion, the court stated "[T]his Court will enter an appropriate order remanding the remainder of the case" to the New Jersey state court. Id. (emphasis added). In Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 286 (3d Cir. 1991), we stated, "Should there be `any ambiguity or obscurity or if the judgment fails to express the rulings in the case with clarity or accuracy, reference may be had to the findings and the entire record for the purpose of determining what was decided.' " (quoting Security Mutual Casualty Co. v. Century Casualty Co., 621 F.2d 1062, 1066 (10th Cir. 1980)).

_____

2. Although the Amended Order failed to dispose expressly of Count Six as it applied to the hospital and doctor, counsel for both U.S. Healthcare and the Baumans agreed at oral argument that the District Court intended to remand all of the remaining claims, and that its failure to do so was merely a clerical or technical oversight. Federal Rule of Civil Procedure 60(a) provides that clerical or technical errors may be corrected at any time, even after an appeal has beenfiled. See In re West Tex. Marketing Corp., 12 F.3d 497, 504 (5th Cir. 1994).

Remand for this purpose is not always necessary. See 11 Charles Alan Wright, Arthur R. Miller & May Kay Kane, Federal Practice and Procedure: Civil 2d S 2856, at 251-52 (2d ed. 1995) (Notwithstanding the availability of Rule 60(a)'s mechanism for obtaining a correction from the district court, appellate courts "have treated clerical errors, oversights, and omissions as if they had been corrected and have not required the formality of a correction by the district court."). For example, in a case in which the jury rendered verdicts on both causes of action sued upon, but the district court entered only one judgment, this court deemed the failure of the district court to enter two judgments an "obvious clerical error" and treated the appeal as if two judgments had been entered without requiring the parties to return to "a presently very much overburdened United States District Court for technical correction." Brown v. Moore, 247 F.2d 711, 714 n.2 (3d Cir. 1957).

8

We, therefore, conclude that the District Court intended to remand the claims against Kennedy Hospital and Dr. Nemeh in Count Six to the state court but, through a clerical error, overlooked amending the final paragraph of its order to reflect this disposition. In light of our precedent, see note 2 supra, we treat the order as one that remanded all non-dismissed claims, and one that is accordingly final. Consequently, we turn now to the nature of our jurisdiction.

B.

Following the District Court's holdings that there was subject matter jurisdiction over Count Six under 28 U.S.C. S 1331 and supplemental jurisdiction over the remaining claims, the court invoked its discretionary authority to decline to retain supplemental jurisdiction and remanded the non-dismissed counts and claims under 28 U.S.C. S 1367(c)(3), rather than under 28 U.S.C.S 1447(c), which governs remand when subject matter jurisdiction is wholly lacking. Had it used the latter statute we would have no appellate jurisdiction, as that section precludes review of a district court's remand except in limited circumstances not applicable here. See 28 U.S.C. S 1447(d) ("an order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise. . ."). Although S 1367 does not contain a similar bar to appellate jurisdiction following a discretionary remand, the Baumans contend the remand order cannot be reviewed because it is not final under 28 U.S.C. S 1291. Indeed, the order that U.S. Healthcare appeals from -- an order partially denying a motion to dismiss -- is interlocutory in nature and not ordinarily appealable under S 1291. See, e.g., Akerly v. Red Barn Sys., Inc., 551 F.2d 539, 543 (3d Cir. 1977).

U.S. Healthcare counters with substantial authority from this court to support reviewability. It cites Hudson United Bank v. LiTenda Mortg. Corp., 142 F.3d 151, 155 (3d Cir. 1998), as approving appellate jurisdiction of a district court's order dismissing the federal counts and then exercising its discretionary power under 28 U.S.C. S 1367(c)(3) to remand the remaining claims. It also cites Carr v. American Red Cross, 17 F.3d 671 (3d Cir. 1994),

9

where we accepted appellate jurisdiction under the collateral order doctrine after the district court dismissed a party and then, using its discretion, remanded the case.

We find most apt and controlling our decision in Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n, 90 F.3d 797 (3d Cir. 1996). In that case, two labor organizations were competing for the right to represent nurses in several health care facilities. The Nurses Association filed eleven state tort law claims against its rival, the Education Association. The district court held that nine claims were preempted by federal labor law and granted judgment on the pleadings as to those counts, but it held that two were not preempted and remanded them to the state court. The Nurses Association appealed, and the Education Association cross-appealed.

We held that we had appellate jurisdiction under S 1291 because a discretionary remand under S 1367(c)(3) divests a federal court of "all control over the action." 90 F.3d at 801; accord Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1350 (11th Cir. 1998) (accepting appellate jurisdiction after S 1367(c)(3) remand to review district court's discretionary order). This is consistent with our reasoning in Carr, where we noted that appellate review of a discretionary remand under S 1367(c)(3) is appropriate because the practical effect of rejecting jurisdiction would have been to render a party unable to obtain later review of that decision. See Carr, 17 F.3d at 678.

We have essentially the same circumstance here: preemption of a state-law claim and remand of the remaining claims to state court. Following Pennsylvania Nurses Association, we conclude that jurisdiction lies under S 1291. As a result, U.S. Healthcare's petition for a writ of mandamus is moot. See Pennsylvania Nurses Ass'n, 90 F.3d at 801. Jurisdiction over the Baumans' cross-appeal from the dismissal of Count Six raises no issue as it is clearly final under S 1291.

III.

Turning to the merits of the parties' contentions, we review the District Court's decision to remand under

10

S 1367(c)(3) for abuse of discretion; however, to the extent that the underlying issue giving rise to that remand decision, in this case the extent of preemption, is one of law, our review is de novo. See Engelhardt, 139 F.3d at 1351 n.4; Zuniga v. Blue Cross & Blue Shield of Mich., 52 F.3d 1395, 1400 (6th Cir. 1995). U.S. Healthcare argues that the District Court erred when it concluded that ERISA does not completely preempt Counts One, Two and Five of the Baumans' complaint. The Baumans argue that the court erred when it ruled Count Six was completely preempted.

A.

Under the "well-pleaded complaint" rule, federal jurisdiction is lacking unless a federal question appears on the face of a properly pleaded complaint; a federal defense does not confer subject matter jurisdiction. See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9-12 (1983); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908). There is nothing on the face of the Baumans' complaint that reveals any federal cause of action, and it is manifest that they have not, through "artful pleading," sought to defeat jurisdiction that would otherwise be apparent on the face of the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 704 (9th Cir. 1998). Hence, according to the usual operation of the well-pleaded complaint rule, federal jurisdiction would be lacking where, as here, the complaint is based entirely on state law.

U.S. Healthcare seeks to fall within the narrow exception to the well-pleaded complaint rule for instances where Congress has expressed its intent to "completely pre-empt" a particular area of law such that any claim that falls within this area is "necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). Unlike ordinary preemption, which would only arise as a federal defense to a state-law claim, complete preemption operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint. The Supreme Court has held that in enacting the civil-enforcement

11

provisions of section 502(a) of ERISA, Congress intended to completely preempt state law. See, e.g., Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987).

As Professor Wright has noted, "preemption" is used in the law in more than one sense. Charles Alan Wright, Law of Federal Courts S 238 at 230. It is important to distinguish complete preemption under section 502(a) of ERISA, which is used in this sense as a jurisdictional concept, from express preemption under section 514(a) of ERISA, which is a substantive concept governing the applicable law. See Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 171-72 (3d Cir. 1997). There are instances in which the Supreme Court has implied a congressional intent to preempt state law, see, e.g., International Paper Co. v. Ovellette, 479 U.S. 481, 491-92 (1987), but it included an express preemption provision in ERISA. Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C.S 1144(a). State-law claims that are subject to express preemption are displaced and thus subject to dismissal. See Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985). Claims that are completely preempted are "necessarily federal in character," and thus are converted into federal claims. See Taylor, 481 U.S. at 63.

Consequently, to determine whether any of the claims stated in the Baumans' complaint are completely preempted, we consider whether they "fall within the scope of" ERISA's civil-enforcement provisions. Dukes, 57 F.3d at 355. U.S. Healthcare argues that the complaint essentially seeks recovery under state law for the HMO's denial of benefits under a health-benefits plan governed by ERISA. It continues, because section 502(a)(1)(B) creates a cause of action to recover such benefits, all of the Baumans' claims, including those asserted in Counts One, Two and Five, come within that section and are therefore completely preempted. Under section 502(a)(1)(B), a participant or beneficiary may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. S 1132(a)(1)(B).

12

We last considered the operation of this provision in the context of medical malpractice actions in Dukes, where we reviewed the complaints filed in two consolidated cases. In one of these cases, the widow of Darryl Dukes, who had been a participant in a U.S. Healthcare HMO, filed an action in state court alleging medical malpractice and negligence against numerous defendants based on the failure of the doctors to perform a blood test that would have revealed the patient's high blood sugar levels. The complaint also alleged that the HMO was both vicariously liable and directly negligent in failing to use reasonable care in, inter alia, screening, evaluating, and monitoring the providers of the medical services dispensed to beneficiaries. See Dukes, 57 F.3d at 352. In the second case, the plaintiffs alleged that the obstetrician who treated the expectant mother negligently ignored symptoms of preeclampsia, and that this negligence resulted in a stillbirth. The plaintiffs also sued the HMO on theories of ostensible and actual agency as well as for negligence in its "selection, employment, and oversight of the medical personnel who performed the actual medical treatment." Id. at 353.

We rejected U.S. Healthcare's complete preemption arguments in both cases. Analyzing the gravamen of the complaints, we observed that neither one pled state claims falling within the scope of ERISA's civil enforcement scheme because there was nothing raised regarding a failure "to provide benefits due under the plan." The plaintiffs did not allege that the failure to perform the tests arose in any way from a denial of benefits under the ERISA plan involved. See id. at 356–57. Rather, both complaints asserted claims regarding the quality of the care received. See id. at 357. We emphasized that the statutory language permitting an ERISA action to " `recover benefits due. . . under the terms of [the] plan' is concerned exclusively with whether or not the benefits due under the plan were actually provided. The statute simply says nothing about the quality of benefits received." Id. Nor could we find any basis in the legislative history for concluding that quality claims, as opposed to quantity ones, would be completely preempted. See id.

Similarly, we rejected U.S. Healthcare's arguments that the complaints at issue raised claims regarding "rights

13

under the terms of the plan;" we held that the phrase applied to such matters as benefit eligibility procedures, as opposed to a specific benefit under the plan. See id. Moreover, the negligence counts alleged claims under pre-existing state law rather than "new `rights under the terms of the plan.' " Id. at 358. We observed that "patients enjoy the right to be free from medical malpractice regardless of whether . . . care is provided through an ERISA plan." Id.

Perhaps the most significant contribution made by the Dukes opinion was the distinction drawn between (1) state-law claims directed to the quality of benefits provided, which are not completely preempted, and (2) claims "that the plans erroneously withheld benefits due" or that seek "to enforce [plaintiffs'] rights under their respective plans or to clarify their rights to future benefits," which are subject to complete preemption. Id. at 356. To reiterate, we embraced a distinction between claims pertaining to the quality of the medical benefits provided to a plan participant and claims that the plan participant was entitled to, but did not receive, a certain quantum of benefits under his or her plan. See id. at 357-58.

There are some cases in which it may be difficult to distinguish between claims challenging the quality of benefits rather than their quantity. See id. ("We recognize that the distinction between the quantity of benefits due under a welfare plan and the quality of those benefits will not always be clear. . . ."). These difficulties arise, at least in part, because the same HMO may have assumed both the role as a plan administrator and the separate role as a provider of medical services.

As an administrator overseeing an ERISA plan, an HMO will have administrative responsibilities over the elements of the plan, including determining eligibility for benefits, calculating those benefits, disbursing them to the participant, monitoring available funds, and keeping records. As we held in Dukes, claims that fall within the essence of the administrator's activities in this regard fall within section 502(a)(1)(B) and are completely preempted.

In contrast, as noted by the Secretary, when the HMO acts under the ERISA plan as a health care provider, it

14

arranges and provides medical treatment, directly or through contracts with hospitals, doctors, or nurses. See Dukes, 57 F.3d at 361; see also Corcoran v. United Healthcare, Inc., 965 F.2d 1321, 1329–34 (5th Cir. 1992) (recognizing that HMOs act as both health care providers and plan administrators). In performing these activities, the HMO is not acting in its capacity as a plan administrator but as a provider of health care, subject to the prevailing state standard of care. For obvious reasons, U.S. Healthcare contends that all of the Baumans' claims against it fall into the administrative category, which are completely preempted, and that therefore the remand of the three counts to state court was erroneous.

In examining the language of Counts One, Two, and Five, we conclude that the District Court did not err in holding that these counts were not completely preempted. It is significant that none of these three counts as pled alleges a failure to provide or authorize benefits under the plan, and the Baumans do not claim anywhere in these counts that they were denied any of the benefits that were due under the plan.

Count One challenges U.S. Healthcare's policy of presumptively discharging newborn infants within twenty-four hours. This count alleges that the HMO adopted and implemented this policy "without adequate consideration for whether this policy was medically appropriate." App. at 16. The count charges U.S. Healthcare with both direct negligence for the adoption and implementation of the policy and with vicarious liability for the negligence of Dr. Nemeh and Kennedy Hospital.

We have already held in Dukes that a vicarious liability claim against U.S. Healthcare for a doctor's malpractice does not fall within the scope of section 502(a)(1)(B). In this case, the vicarious liability claim arising from Michelina's premature discharge, as stated in Count One, is indistinguishable in any meaningful way from those that we held were not completely preempted in Dukes.

With respect to the direct negligence claim, the Baumans' challenge to U.S. Healthcare's twenty-four-hour discharge policy is directed at the HMO's actions in what we

15

characterized in Dukes as an HMO's role in "arranging for medical treatment" rather than its role as a plan administrator determining what benefits are appropriate. Dukes, 57 F.3d at 360. Thus, it is the HMO's essentially medical determination of the appropriate level of care that the Baumans claim contributed to the death of their daughter. This is not a claim that a certain benefit was requested and denied. As the Secretary points out, under the facts as pleaded in the complaint, U.S. Healthcare's policy and incentive structure were such that "the Baumans never had the option of making an informed decision as to whether to pay for the hospitalization themselves," as would occur in a situation in which coverage is sought and denied. Secretary of Labor Br. at 19. Accordingly, this claim fits squarely within the class of claims that we identified in Dukes as involving the quality of care. Here, as in Dukes, "the plaintiffs . . . are attempting to hold the HMO[ ] liable for [its] role as the arranger[ ] of their [decedent's] medical treatment." Dukes, 57 F.3d at 361.

Count Two challenges the same actions by the HMO. It differs from Count One principally in that it charges reckless indifference on the part of U.S. Healthcare. This count charges that U.S. Healthcare adopted its twenty-four hour presumptive discharge policy "knowing . . . that many infants would be put at risk for life-threatening disease after leaving the hospital" and that the HMO thus acted with reckless indifference to the health consequences of this policy. App. at 17. Like the negligence claim based upon the discharge policy, this count goes to the quality of care that Michelina received rather than an administrative decision as to whether certain benefits were covered by the plan.

We reject U.S. Healthcare's characterization of these counts as "quintessential" challenges to the quantity of benefits due under an ERISA plan. The allegations in Counts One and Two do not raise the failure of U.S. Healthcare to pay for a benefit or process a claim for benefits as the basis for the injury suffered. The counts are phrased in terms of the quality of the medical care provided.

16

In a similar vein, Count Five charges that U.S. Healthcare was "negligent in adopting hospital utilization policies . . . that discouraged . . . physicians from re-admitting infants to the hospital when health problems were identified subsequent to [their] discharge from the hospital." App. at 20. Additionally, Count Five alleges that U.S. Healthcare was negligent in its "selection, supervision, training, and/or monitoring of Dr. Nemeh." Id.

Both aspects of this count also pertain to U.S. Healthcare's actions in its role as a provider or arranger of medical services. As the Baumans allege, the HMO adopted policies that "encouraged, pressured, and/or directly or indirectly required" their participating physicians to discharge newborn infants and that also discouraged physicians to readmit newborn infants when the appropriate standard of care required otherwise under state law. App. at 16, 20. Assuming these allegations are true, as we must when considering a motion to dismiss, the Baumans seek recovery for decisions that U.S. Healthcare made in providing and arranging medical services, decisions that adversely influenced the medical judgment of its participating physicians.

Similarly, the portion of Count Five that alleges negligence in the HMO's selection, supervision, training, and/or oversight of Dr. Nemeh addresses not plan-administration decisions, but rather decisions that the HMO allegedly made in the course of arranging for the provision of medical services. This claim is indistinguishable from the Viscontis' claim in Dukes that the HMO was "negligent in its selection, employment, and oversight of the medical personnel who performed the actual medical treatment," which we held was not subject to complete preemption. Dukes, 57 F.3d at 353, 358-59. Such claims do not involve an attempt to recover benefits due, enforce rights, or clarify future benefits under a plan, but rather seek recovery under "the quality standard found in the otherwise applicable [state] law." Id. at 359.

U.S. Healthcare emphasizes that the language in this count refers to its adoption of policies "with respect to hospital utilization by its participating physicians," and it argues that Dukes compels the conclusion that all claims

17

regarding "utilization" are necessarily about "refus[al] to provide the services to which membership entitled" beneficiaries, an administrative rather than health-provider function. U.S. Healthcare Reply Br. at 20-21. A fair reading of Count Five shows that it is not directed at the "utilization review" process referred to in Dukes. The "utilization review" to which Dukes was referring is "a cost-containment service," which entails prospective and concurrent assessments of the appropriateness of medical and hospital care. See, e.g., Corcoran, 965 F.2d at 1323, 1327. Utilization review in that sense is unrelated to the claim in Count Five that raises the quality-of-care consequences of the pre-certification policy, as well as U.S. Healthcare's negligent oversight of its doctors when it acted as a medical provider. Indeed, U.S. Healthcare's statement at oral argument that the twenty-four hour pre-certification policy is not a hard and fast rule and can be extended as the doctor sees fit only reinforces the view that it is a discretionary medical decision rather than an administrative one.

In summary, we conclude that the District Court did not err in holding that Counts One, Two, and Five were not claims "to recover benefits due . . . under the terms of [the] plan, falling within section 502," and hence were not completely preempted.

B.

In their cross-appeal, the Baumans contend that the District Court erred in concluding that Count Six was completely preempted. Here, as above, we look to the nature of the claims as reflected by the language of the count. The District Court read the language of Count Six, alleging U.S. Healthcare's negligence in "not providing for [an in-home] visit by a participating provider[a pediatric nurse], despite assurances under its L'il Appleseed program that such a visit would be provided and despite a telephone call . . . from the Baumans requesting this service," as stating a claim that fits under section 502(a). Therefore, the court held that it was completely preempted, and subsequently dismissed. We cannot say that the District Court was unreasonable in so holding.

18

On the other hand, the Baumans urge this court to interpret the complaint as a state cause of action for violating a tort duty "to provide [the Bauman family] adequate medical care, rather than a violation of a [contractual] promise . . . made to them in their ERISA plan." Bauman Br. at 34. The Secretary concurs with the Baumans' position. PAlthough the question as to Count Six is a close one, we agree with the Baumans and the Secretary that Count Six raises a claim regarding the adequacy of the care that Michelina Bauman received and is therefore directed toward the HMO's action in its capacity as a medical provider, rather than as a benefits administrator. As is the case in the earlier counts, Count Six raises an issue regarding the inadequacy of the quality of care provided under the plan. The mere fact that the Baumans referred in their complaint to a benefit promised by their health care plan does not automatically convert their state-law negligence claim into a claim for benefits under section 502. If, as the Baumans contend, U.S. Healthcare failed to meet the standard of care required of health care providers by failing to arrange for a pediatric nurse in a timely manner, Count Six sets forth an ordinary state-law tort claim for medical malpractice.

We recognize that we observed in Dukes that in some cases the quality of care may be "so low that the treatment received simply will not qualify as health care at all. In such a case, it well may be appropriate to conclude that the plan participant or beneficiary has been denied benefits due under the plan." Dukes, 57 F.3d at 358. This was plain dictum in Dukes, as there were no facts suggesting such patently low treatment. As dictum, it does not bind this panel. See McGurl v. Trucking Employees of North Jersey Welfare Fund, Inc., 124 F.3d 471, 484 (3d Cir. 1997). We note in passing that U.S. Healthcare has not suggested that its failure to provide the pediatric nurse was such grossly inadequate health care as to fall within the dictum, and so we have no occasion to comment on when it would be applicable, if at all.

After it concluded that it had subject matter jurisdiction over Count Six, the District Court dismissed that count as expressly preempted by section 514(a), 29 U.S.C.S 1144(a),

19

on the force of its determination that the count was completely preempted. Inasmuch as we conclude that Count Six was not completely preempted, the District Court did not have subject matter jurisdiction over the complaint and should have remanded it to state court under 28 U.S.C. S 1447(c).3 As we stated in Dukes, "[w]hen the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted underS 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption." Dukes, 57 F.3d at 355.

IV.

We will affirm the District Court's decision that Counts One, Two, and Five are not completely preempted, and we will reverse its decision that Count Six is completely preempted and reverse its order dismissing Count Six. We will therefore remand to the District Court with instructions to remand Count Six to the New Jersey state court from which it was removed. It is that court that will be in a position to decide the express preemption issue, should U.S. Healthcare raise it there.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

3. As a result of our disposition, we need not reach U.S. Healthcare's contention that the District Court itself should have decided whether the claims were expressly preempted under section 514 of ERISA, rather than remanding that issue to the state court.