

2000 Decisions

**Opinions of the United
States Court of Appeals
for the Third Circuit**

12-26-2000

# Lazorko v. PA Hospital

Precedential or Non-Precedential:

Docket 98-1776

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Lazorko v. PA Hospital" (2000). *2000 Decisions.* Paper 258.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/258

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 26, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1776/1777/1790

JONATHAN LAZORKO, Administrator of the Estate of
PATRICIA NORLIE, a/k/a PATRICIA NORLIE-LAZORKO;
JONATHAN LAZORKO, Personal Representative of
PATRICIA NORLIE-LAZORKO

v.

PENNSYLVANIA HOSPITAL; INSTITUTE OF
PENNSYLVANIA; DAVID E. NICKLIN, M.D.; UNIVERSITY
CITY FAMILY MEDICINE; U.S. HEAL THCARE,
t/a/ HMO-PA

       Jonathan Lazorko, Administrator of the Estate of
       Patricia Norlie, a/k/a Patricia Norlie-Lazorko;
       Jonathan Lazorko, Personal Representative of
       Patricia Norlie-Lazorko and John J. O'Brien, III,
       Esquire,

       Appellants (98-1776)

JONATHAN LAZORKO, Administrator of the Estate of
PATRICIA NORLIE, a/k/a PATRICIA NORLIE-LAZORKO;
JONATHAN LAZORKO, Personal Representative of
PATRICIA NORLIE-LAZORKO

       Appellants (98-1777)

v.

PENNSYLVANIA HOSPITAL; INSTITUTE OF
PENNSYLVANIA; DAVID E. NICKLIN, M.D.; UNIVERSITY
CITY FAMILY MEDICINE; U.S. HEAL TH CARE,
t/a/ HMO-PA

JONATHAN LAZORKO, Administrator of the Estate of
PATRICIA NORLIE, a/k/a PATRICIA NORLIE-LAZORKO;
JONATHAN LAZORKO, Personal Representative of
PATRICIA NORLIE-LAZORKO

v.

PENNSYLVANIA HOSPITAL; INSTITUTE OF
PENNSYLVANIA; DAVID E. NICKLIN, M.D.; UNIVERSITY
CITY FAMILY MEDICINE; U.S. HEAL TH CARE,
t/a/ HMO-PA

     U.S. Healthcare,

     Appellant (98-1790)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 96-cv-04858)
District Judge: Honorable Louis H. Pollak

Argued on June 26, 2000

Before: ROTH and GARTH, Circuit Judges,
STANTON,* District Judge

(Opinion filed: December 26, 2000)

     John J. O'Brien, III, Esquire
      (Argued)
     O'Brien & O'Brien
     257 East Lancaster Avenue
     Suite 201
     Wynnewood, PA 19096

     Attorney for Appellants/
Cross Appellees

_____

     * Honorable Louis L. Stanton, District Court Judge for the Southern
     District of New York, sitting by designation.

2

Barbara S. Magen, Esquire
Adrian R. King, Sr., Esquire
Douglas A. Brockman, Esquire
Post & Schell
1800 John F. Kennedy Boulevard
19th Floor
Philadelphia, PA 19103

 Attorneys for Appellees
Pennsylvania Hospital and
Institute of Pennsylvania

Rawle & Henderson LLP
Carl D. Buchholz, III, Esquire
 (Argued)
Angela M. Heim, Esquire
The Widener Building, 16th Floor
One South Penn Square
Philadelphia, PA 19107

 Attorneys for Appellee/Cross
Appellant United States Healthcare
Systems of Pennsylvania, Inc.,
t/a/ U.S. Healthcare

OPINION OF THE COURT

ROTH, Circuit Judge:

Patricia Norlie-Lazorko committed suicide in July 1993, allegedly as a consequence of her untreated mental illness. Her husband, Jonathan Lazorko, brought suit in state court against Dr. David Nicklin, Patricia's doctor; University City Family Medicine, Nicklin's employer; Pennsylvania Hospital; the Institute of Pennsylvania; and U.S. Healthcare, Inc., the health maintenance or ganization (HMO) administering Lazorko's health benefits. After a series of removals of the case to the U.S. District Court and remands to state court, Lazorko appeals the dismissal of his direct claims against U.S. Healthcar e and the District Court's award of sanctions against him for including two purportedly frivolous allegations in his complaint. U.S.

3

Healthcare cross-appeals the District Court's remand to state court of the vicarious liability claims against it.

Following our recent decision in In r e U.S. Healthcare, Inc., 193 F.3d 151 (3d Cir. 1999), 1 we will affirm the remand to state court of the vicarious liability claims against U.S. Healthcare. We will, however, reverse the judgment of the District Court, dismissing the dir ect claims against U.S. Healthcare (Count I of the Complaint), and we will remand these claims to the District Court for remand to the state court. As for sanctions, Lazorko's attorney appealed only the interim decision sanctioning him, not the subsequent award to U.S. Healthcare of a specified amount of attorney's fees. We will ther efore dismiss the appeal of sanctions for lack of appellate jurisdiction.

I. Background

Norlie-Lazorko suffered from depr ession and schizophrenia. In late 1992, she attempted suicide and was hospitalized for six months. She was dischar ged from the hospital in June 1993 but again began contemplating suicide. Although she asked to be rehospitalized, Dr. Nicklin denied her request. On July 4, 1993, Norlie-Lazorko committed suicide.

Following his wife's death, Jonathan Lazorko, as administrator of her estate, brought suit in Pennsylvania state court. Lazorko alleged as to U.S. Healthcar e that under state law it was directly and vicariously liable for his wife's death because the HMO imposed financial disincentives on Dr. Nicklin that discouraged him from recommending her for additional treatment.

Based on this claim, U.S. Healthcare removed the case to federal court in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. S 1446(b). U.S. Healthcare argued that the denial of the hospitalization request was completely preempted by ERISA under S 502(a)(1)(B), which gives a member of an ERISA plan an exclusive federal

_____

1. In re U.S. Healthcare was decided after the District Court's opinions in
this case. Hence, the District Court did not have that decision available to it.

4

remedy for claims alleging the denial of benefits guaranteed by that plan. Lazorko moved to remand the case to state court. The District Court rejected Lazorko's motion, construing his direct liability claims as being for the improper denial of benefits, and thus completely preempted under ERISA. Lazorko v. Pennsylvania Hosp., et al., No. 95-CV-6151, slip op. at 2 (E.D. Pa. Nov. 21, 1995) (Lazorko I). In a subsequent decision, the District Court dismissed the claims that were preempted by ERISA's civil remedy and remanded the rest of the case to state court. Lazorko v. Pennsylvania Hosp., et al., No. 95-CV-6151, slip op. at 2-3 (E.D. Pa. Jan. 4, 1996) (Lazorko II).

On this first remand, the state court dismissed four counts of Lazorko's complaint. Three other counts, which alleged intentional misrepresentation, fraud, and violation of the state consumer protection law, were stricken without prejudice to amending. Lazorko did amend, but he left intact his central contention that U.S. Healthcare's financial penalties interfered with Dr. Nicklin's professional judgment, causing Norlie-Lazorko's death.

U.S. Healthcare removed the case to federal court a second time.[2] In response, Lazorko moved again for a remand. Again, however, the District Court denied the remand motion, concluding as it had previously that Lazorko's direct negligence claims against U.S. Healthcare for denial of hospital benefits were completely preempted by ERISA's § 502(a)(1)(B). The court did grant the motions to dismiss of the other defendants.[3] Lazorko v. Pennsylvania Hosp., et al., CA No. 96-4658, slip op. at 8 (E.D. Pa. Mar. 28, 1997) (Lazorko III).

Following the second removal to federal court, Lazorko amended his complaint twice more. Although he added new facts, he did not change his central contention. Moreover, rather than add a new claim, based on ERISA, to his existing claims of direct and vicarious liability, Lazorko instead moved to strike U.S. Healthcare's ERISA defenses,

_____

2. This time, the case was assigned to a different district judge.

3. The other defendants are not parties to this appeal since Lazorko has not appealed the dismissal of the claims against them.

5

asserting that U.S. Healthcare had not shown that his health plan qualified as an ERISA plan. U.S. Healthcare moved for summary judgment, arguing that, because his state law claims related to an ERISA plan, they were superseded by ERISA's express preemption clause, S 514(a), 29 U.S.C. S 1144(a).

The District Court denied Lazorko's motion to strike U.S. Healthcare's ERISA defenses, reasoning that, under the law of the case, earlier proceedings had established the existence of a plan. Lazorko v. Pennsylvania Hosp., et al., CA No. 96-4858, slip op. at 4-6 (E.D. Pa. June 30, 1998) (Lazorko IV). The District Court then granted summary judgment for U.S. Healthcare on preemption grounds on all of Lazorko's direct liability claims against the HMO, including the claims in Counts II, III and IV for intentional misrepresentation, fraud, and violation of Pennsylvania's consumer protection law.4 The court remanded Lazorko's vicarious liability claims against U.S. Healthcar e, however, because they alleged medical malpractice, an ar ea of tort law traditionally regulated by the states, which did not implicate the regulation of employer plans and, thus, was outside the scope of ERISA's express pr eemption.

U.S. Healthcare also moved to sanction Lazorko's attorney, alleging that he had failed to r easonably investigate several of the charges levied against U.S. Healthcare, including the allegations that the company issued sham benefit policies and that it intentionally denied patients treatment so as to maximize pr ofits. The District Court granted U.S. Healthcare's motion in a second June 30, 1998, order, which struck the of fending allegations from the complaint and awarded the costs incurred to defend against the challenged allegations.5 On July 24 and

_____

4. Because Lazorko has not briefed or argued that his claims against U.S. Healthcare, contained in Counts II, III and IV, are directed at the quality, rather than the quantity, of benefits r eceived under his plan, we
will affirm the dismissal of these counts. Our discussion in this opinion of the direct claims against U.S. Healthcar e will be in reference only to those claims alleged in Count I.

5. The offending allegations appear in paragraphs 25 and 39 of the Complaint. The District Court did not err in striking these paragraphs.

6

29, Lazorko appealed both of the June 30 orders. U.S. Healthcare cross-appealed the remand to the state court of the vicarious liability claims against it.

Following a hearing on the amount of sanctions, the District Court awarded U.S. Healthcare costs of $2,452.50 in an order filed on August 3, 1998. Lazorko did not appeal this order.

II. Jurisdiction and Standard of Review

The District Court purportedly had removal jurisdiction under 28 U.S.C. S 1441(a) by virtue of ERISA's complete preemption provision, S 502(a)(1)(B), codified at 29 U.S.C. S 1132(a)(1)(B), which satisfies the "arising under" requirement for federal question jurisdiction under 28 U.S.C. S 1331. See Metropolitan Life Ins. Co. v. General Motors Corp., 481 U.S. 58, 64-66 (1987). W e have appellate jurisdiction under 28 U.S.C. S 1291. W e review the District Court's decision to remand under S 1367(c)(3) for abuse of discretion, but have plenary review of the underlying basis for remand to the extent that question is a legal one. See In re U.S. Healthcare, 193 F.3d at 160 (citing Englehardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1351 n.4 (11th Cir. 1998)).

Although the District Court relinquished jurisdiction over this case when it either dismissed or remanded all the claims before it, it still had jurisdiction to order sanctions. Moreover, a district court has jurisdiction to impose Rule 11 sanctions on litigants and attorneys appearing before it even if the court is subsequently determined to have lacked

_____

The court had S 502(a) removal jurisdiction and, therefore, could rule on and strike them. We will affirm the District Court's determination that Lazorko's attorney failed to satisfy the "stop, think, investigate and research" rule before including these paragraphs in his Complaint. See Gaiardo v. Ethyl Corp., 838 F.2d 479, 482 (3d Cir. 1987). Because Lazorko's attorney had no basis to assert the claims in paragraphs 25 and 39, the District Court was within its authority to strike them, as well as to impose sanctions. We will affir m the striking of paragraph 25. We need not affirm the striking of paragraph 39 because we are affirming the dismissal of Count III, of which paragraph 39 is a part.

7

subject matter jurisdiction over the claim in which the sanctionable conduct occurred. See W illy v. Coastal Corp., 503 U.S. 131, 139 (1992); In re Jaritz Industries, Ltd., 151 F.3d 93, 96 (3d Cir. 1998) (relying on Willy).

Concerning the award of sanctions, while we review a district court's decision to impose sanctions for abuse of discretion, we have plenary review of the question of our jurisdiction over the appeal of the award. See Shareholders v. Sound Radio, 109 F.3d 873, 878 (3d Cir . 1997). An appellate court lacks jurisdiction over an appeal that is untimely filed, including premature appeals. See Hindes v. Federal Deposit Ins. Corp., 137 F.3d 148, 155 (3d Cir. 1998). An award of sanctions is not a final order, and thus not appealable, until the district court deter mines the amount of the sanction. See Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers, 855 F.2d 1080, 1089 (3d Cir. 1988). The District Court did not make this determination until its subsequent order, filed on August 3, 1998. Consequently, plaintiff 's July 29 notice of appeal of the June 30 sanctions order was pr emature and untimely.

Nor does the fact that the District Court subsequently entered its final order on the sanctions motion on August 3, 1998, cure this premature appeal and make it timely. A premature appeal can be cured by a subsequent final order if the untimely appealed decision would otherwise constitute a final judgment. See Fed. R. App. P. 4(a)(2). Because Rule 11 sanctions awards are interlocutory in nature, this rule does not extend to them. See FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 275–76 (1991). Thus, we lack jurisdiction over the sanctions order because plaintiff 's counsel failed to timely appeal that order once it had become final. W e will, therefore, dismiss that portion of the appeal.

III. The Direct Claims Against U.S. Healthcare

A defendant may remove to federal court an action that a plaintiff originally files in state court if the federal court also has jurisdiction at the time of filing. See 28 U.S.C. S 1441(c). Whether removal is proper is governed by the

8

"well-pleaded complaint" rule. If a federal question appears on the face of the plaintiff 's complaint, the defendant may remove the case to federal court. If, however , the defendant merely has a federal law defense, he may not r emove the case, although he may assert the federal defense in state court. See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9-12 (1983); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908).

One exception to this rule is for matters that Congr ess has so completely preempted that any civil complaint that falls within this category is necessarily federal in character. Complete preemption creates removal jurisdiction even though no federal question appears on the face of the plaintiff 's complaint. One example of complete preemption is a claim for denial of benefits under an ERISA plan. Such a claim comes under ERISA's civil enforcement provision, S 502(a)(1)(B). See Metropolitan Life Ins. Co., 481 U.S. at 63-64.

Complete preemption contrasts, however, with another form of preemption, substantive pr eemption, which displaces state law but does not, as a defense, confer federal question jurisdiction. ERISA also contains an express preemption provision, S 514(a), that creates substantive preemption by trumping "any and all State laws [that] . . . relate to" an ERISA plan. 29 U.S.C. S 1144(a). Unlike the scope of S 502(a)(1)(B), which is jurisdictional and creates a basis for r emoval to federal court, S 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court.

Much of the District Court's discussion in Lazorko IV centered on the scope of S 514(a). W e do not need, however, to review those conclusions because our intervening decision in In re U.S. Healthcare convinces us that Lazorko's direct claims against U.S. Healthcar e are not completely preempted. These direct claims, as they are presently pled, challenge the soundness of a medical decision by a health care provider rather than the administration of benefits under an ERISA plan. Thus, Lazorko does not seek a remedy for the administrative

denial of a benefit under S 502(a)(1)(B). For that reason, the removal of Lazorko's action to the federal court on the basis of complete preemption was improper .

This conclusion follows from our decision in In re U.S. Healthcare. There, the plaintif fs, like Lazorko, challenged U.S. Healthcare's financial incentive structure. They claimed it contributed to their newborn daughter's death because she was prematurely dischar ged from the hospital in order that the hospital might avoid monetary penalties. Thus, the infant was denied essential post-natal car e. See 193 F.3d at 156. The plaintiffs br ought their suit against the HMO in New Jersey state court, alleging a variety of state law claims aimed at the influence which U.S. Healthcare's financial incentive system had on medical decisions. As in the case before us, U.S. Healthcare removed the case to federal court, claiming that the failure to provide adequate post-natal care constituted a denial of benefits that was completely preempted by ERISA.

Relying on our earlier decision in Dukes v. U.S. Healthcare, Inc., 57 F.3d 350 (3d Cir. 1995), we reasoned that the refusal to offer additional car e, whether couched in terms of direct or vicarious liability, could be a question of the quality of care provided. As such, it did not amount to a claim that benefits to which the plaintif fs were otherwise entitled had been denied by U.S. Healthcare when administering a plan. Instead, the claim concer ned decisions of treatment that were akin to claims for medical malpractice. See In re U.S. Healthcar e, 193 F.3d at 161-62, 164. We had concluded in Dukes that a claim for vicarious liability against an HMO for a doctor's malpractice fell outside the scope of ERISA's complete preemption clause. In In re U.S. Healthcare, we extended that ruling to encompass claims that an HMO was directly liable for arranging inadequate care. In doing so, we r easoned that financial incentives that discouraged care did not deny plan benefits but instead affected the quality of the care provided. See id. at 162-63, 164. Thus, we held that decisions to deny a particular request in the course of providing treatment could be a claim about the quality -- and not the quantity -- of benefits provided. (In all but the details, Lazorko's claims against U.S. Healthcar e fall

10

squarely within this rubric. On appeal, Lazorko argues that his liability claims amount to ones of quality because U.S. Healthcare implicitly caused Dr. Nicklin to misdiagnose and/or mistreat the severity of Ms. Norlie-Lazorko's illness. Thus, such a claim does not fall within the complete preemption scope of S 502(a)(1)(B).6

U.S. Healthcare counters with two basic arguments, neither of which we find persuasive. First, it argues that Dr. Nicklin's refusal to hospitalize Patricia Norlie-Lazorko amounts to a denial of benefits because hospitalization is a benefit under Jonathan Lazorko's HMO plan. We reject this characterization of the claim. Lazorko is not arguing that his plan is supposed to permit hospitalizations for mental illness and that U.S. Healthcare refused his wife's request for guaranteed service. Instead, he is arguing that, when confronted with his wife's requests for additional treatment, Dr. Nicklin, influenced by U.S. Healthcare's financial incentives that penalized a decision to grant additional hospitalizations, made the medical decision not to readmit her to the hospital. Because Lazorko's claim is one concerning the propriety of care rather than the administration of that care, the claim is not completely preempted. In other words, the claim here is that the denial of Norlie-Lazorko's request for hospitalization occurred in the course of a treatment decision, not in the administration of the Lazorkos' plan generally. See In re U.S. Healthcare, 193 F.3d at 164.

U.S. Healthcare's second contention is that, in light of the recent Supreme Court decision in Pegram v. Herdrich, 120 S.Ct. 2143 (2000), subjecting an HMO to liability is improper because Pegram recognized the centrality of financial incentives to the operation of an HMO. Pegram, however, does not alter our analysis. In evaluating the question of the circumstances under which an HMO owes a fiduciary duty to the members of an ERISA plan, the

_____

6. In making this argument, however, Lazorko continues to hedge against the existence of a plan, on which he bases his argument that ERISA does not govern this case. As the District Court correctly noted, however, the record evidence supports the existence of a plan, as does the law of the case doctrine. See Lazorko IV, slip op. at 4-6.

Pegram court held that mixed eligibility decisions by an HMO (i.e., decisions involving not only the coverage of a particular treatment by the plan but the r easonable medical necessity for the treatment) are not fiduciary decisions under ERISA. The decision in question here, the need to hospitalize Patricia Norlie-Lazorko, appears to be just such a mixed eligibility decision and to the extent that the mixed decision implicates the quality of the care r eceived by Norlie-Lazorko, Pegram does not foreclose the direct claims against U.S. Healthcare.

Before our decision in In re U.S. Healthcare, it was not clear whether the denial of a particular type of benefit, such as hospitalization, fell within S 502(a)(1)(B)'s narrow but exclusive scope. This ambiguity was articulated in Dukes: drawing the line between the denial of benefits under a plan and the provision of substandard car e is difficult. See Dukes, 57 F.3d at 358. In ruling on Lazorko's claims here, however, the District Court did not have the benefit of our further analysis in In re Healthcar e. We now conclude that Lazorko's claim, as it has been pled, falls on the standard of care, not the denial of benefits, side of the line.

We note, moreover, that since our decision in In re U.S. Healthcare, our district courts have consistently applied its reasoning to determine whether it is the quality of care provided or the denial of a plan benefit that is implicated when treatment is refused. See, e.g., Tiemann v. U.S. Healthcare, 93 F.Supp.2d 585 (E.D. Pa. 2000) (classifying failure to diagnosis and treat disease pr operly as question of benefit quality not quantity); Berger v. Livengrin Foundation, 2000 WL 325957 (E.D. Pa. Mar . 27, 2000) (concluding that refusal to provide inpatient care was question of quality of treatment and not denial of benefit due under plan).

Because we conclude that Lazorko's case is not subject to complete preemption, it follows that it was improperly removed from state court. We must therefore vacate the dismissal by the District Court of the direct claims in Count I of the Fourth Amended Complaint and remand those claims to the District Court for remand to state court. When the underlying federal subject matter jurisdiction upon which to remove a case from state court does not

12

exist, the entire case must be remanded. See 28 U.S.C.
S 1447(c).

On remand, it will be for the state court to further
determine whether a S 502 claim of denial of a benefit
provided by his plan is lodged in the heart of Lazorko's
direct claims in Count I. If such a claim should materialize,
that claim will have to be removed once mor e to federal
court. Moreover, on remand the state court will also have
the task to determine to what extent, if any, Lazorko's
claims against U.S. Healthcare are substantively preempted
under S 514. See Dukes, 57 F.3d at 355 ("When the
doctrine of complete preemption does not apply, but the
plaintiff 's state claim is arguably preempted under S 514(a),
the district court, being without removal jurisdiction,
cannot resolve the dispute regarding preemption.").

IV. Conclusion

Because Lazorko requests relief for the consequences of
U.S. Healthcare's provision of inadequate services and not
for the denial of benefits under his health car e plan, Count
I of his Complaint was improperly removed to federal court.
Consequently, we will vacate the District Court's dismissal
of Lazorko's direct claims against U.S. Healthcare and
remand Count I to the District Court for r emand to the
state court for further proceedings. We will affirm the
dismissal of the direct claims against U.S. Healthcare in
Counts II, III and IV. On U.S. Healthcar e's cross-appeal, we
will affirm the District Court's remand to the state court of
the vicarious claims against U.S. Healthcare. Finally, we
will affirm the District Court's dismissal of paragraph 25 of
the Complaint. At the same time, we will dismiss Lazorko's
appeal of the award of sanctions against his attorney
because he failed to timely appeal the final sanctions order.
Thus, we lack jurisdiction over the order .

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13